STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. JUAN
MARTINEZ, A/K/A JOHNNY MARTINEZ,
DEFENDANT-RESPONDENT.

Argued September 11, 1984—Decided November 16, 1984.

568

*Debra L. Stone,* Deputy Attorney General, argued the cause for appellant (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

*John J. Guidera,* Designated Counsel, argued the cause for respondent (*Joseph H. Rodriguez,* Public Defender, attorney).

The opinion of the Court was delivered by

GARIBALDI, J.

Defendant, Juan Martinez, was convicted of aggravated sexual assault under *N.J.S.A.* 2C:14–2a(4). The crux of this appeal is whether there is sufficient evidence for a jury to find beyond a reasonable doubt that at the time of the sexual assault defendant threatened his victim with a gun, within the meaning of *N.J.S.A.* 2C:14–2a(4). The Appellate Division, reversing the conviction, held there was insufficient evidence to support the trial court's instruction on aggravated sexual assault. We granted certification, 96 *N.J.* 286 (1984), and now reverse the judgment of the Appellate Division.

I

Early one evening, as Evelyn and her girlfriend were about to enter Evelyn's home, they met defendant Juan Martinez and his friend, Harry Roman. Evelyn, a small fourteen year old, was a special education student at Mount Carmel Guild School where she had been sent because of her difficulties with reading and writing. Evelyn knew the defendant, who was then forty-seven, from the time he resided with her family for a couple of months.

Evelyn joined the two men. They drove in Roman's automobile to a restaurant where they purchased some food, and then proceeded to Roman's junkyard. At the junkyard, they ate the food in a small building that Roman used as an office.

After eating, they left the office and entered a converted bus located in the junkyard. The bus was furnished with a couch, table, bed, television, and other items. Evelyn and defendant began watching television while Roman, who was intoxicated, slept.

Evelyn asked defendant to awaken Roman so that she could be driven home. Defendant told her that Roman was too drunk and she should wait. She waited a while and then began to insist upon being taken home. Frustrated by his inaction, she grabbed something and threw it at defendant.

At this point, Evelyn's testimony became confused, rendering the chronology of events uncertain. It is clear, however, that at some point during the evening in question, defendant grabbed Evelyn, pushed her, removed her shorts, and forced her to submit to vaginal intercourse. Evelyn screamed, cried, and attempted to kick defendant during the assault. Roman continued to sleep in a drunken stupor on the bed.[1]

It is also indisputable that at some point prior to the sexual assault, Evelyn was playing with Roman's gun. Defendant took the gun from her and menacingly pointed it at her. He then placed the gun on the shelf under the table next to the couch on which she later was attacked. According to Evelyn, defendant "put the gun up under there where I was laying there and then from there that's how everything started."

After the assault, defendant warned Evelyn not to tell her mother, and threatened to harm her mother if she did. Bruised and bloody, Evelyn then left the junkyard. Defendant walked a few blocks with her to set her in the right direction for home. Evelyn, whose mother was then in the hospital, spent that night at the home of a neighbor. Immediately after arriving at the neighbor's home at approximately 2:00 or 3:00 A.M., she took a bath and advised the neighbor that defendant had sexually assaulted her.

After the mother's release from the hospital, Evelyn told her of the incident. Subsequently, she and her mother reported the

---

[1]Although Roman also was charged with first degree aggravated assault, at the conclusion of the State's case the trial court granted Roman's motion for judgment of acquittal.

assault to the Newark police and Evelyn signed a complaint against defendant and Roman.

The court submitted two charges to the jury, first degree aggravated sexual assault, N.J.S.A. 2C:14–2a(4), and second degree sexual assault, N.J.S.A. 2C:14–2c(5). In charging the jury on aggravated sexual assault, the court used the model jury charge.

The jury returned a verdict of guilty against defendant of aggravated sexual assault after deliberating for one hour. He was sentenced to State Prison for a term of eighteen years with a nine-year period of parole ineligibility.

Defendant appealed his conviction alleging that there was insufficient evidence to establish that, in the course of the sexual assault, he was armed with a weapon and threatened Evelyn. Therefore, defendant contended the trial court erred in charging aggravated sexual assault. He asserted that the most the evidence supported was a charge of sexual assault, a second degree crime.

The Appellate Division reversed defendant's conviction and remanded for a new trial, holding that there was insufficient evidence to indicate "that the assault was accompanied by the threat to use a gun on the victim." In reaching its decision, the Appellate Division relied on this Court's reasoning in State v. Christener, 71 N.J. 55 (1976), ruling that the lower court committed reversible error by charging the jury on aggravated sexual assault when there was no factual support for such a charge.

## II

In State v. Reyes, 50 N.J. 454 (1967), we held that the test to be applied by the trial court in determining the sufficiency of the evidence is

whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn

therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt. [*Id.* 50 *N.J.* at 459].

We reaffirmed this test in *State v. Brown*, 80 *N.J.* 587 (1979). In *Brown*, we explained that in applying the aforementioned test, "a jury may draw an inference from a fact whenever it is more probable than not that the inference is true; the veracity of each inference need not be established beyond a reasonable doubt in order for the jury to draw the inference." *Id.* 80 *N.J.* at 592.

This standard is consistent with the United States Supreme Court's opinion in *Jackson v. Virginia*, 443 *U.S.* 307, 99 *S.Ct.* 2781, 2789, 61 *L.Ed.*2d 560, reh. den., 444 *U.S.* 890, 100 *S.Ct.* 195, 62 *L.Ed.*2d 126 (1979). In that case, the Supreme Court stated that the appellate standard of reviewing the sufficiency of evidence to support a criminal conviction

must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Woodby v. INS*, 385 *U.S.* [276] at 282, 17 *L.Ed.*2d 362, 87 *S.Ct.* 483 (emphasis added). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Johnson v. Louisiana*, 406 *U.S.* [356] at 362, 32 *L.Ed.*2d 152, 92 *S.Ct.* 1620. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. [*Id.* 443 U.S. at 318–19, 99 *S.Ct.* at 2789, 61 *L.Ed.*2d at 573].

We apply this standard in our analysis of the record, aware as we were in *Brown* that the State's right to the benefit of reasonable inference cannot be used to reduce the State's burden of establishing the essential elements of the offense charged beyond a reasonable doubt.

### III

*N.J.S.A.* 2C:14–2a(4) provides that a defendant is guilty of aggravated sexual assault

if he commits an act of sexual penetration with another person under any one of the following circumstances:

    \*      \*      \*      \*      \*      \*      \*      \*

(4) The actor is armed with a weapon or any object fashioned in such a manner as to lead the victim to reasonably believe it to be a weapon and threatens by word or gesture to use the weapon or object \* \* \*.

Aggravated sexual assault, with which defendant is charged, is designated as a crime of the first degree. It is the possession of a weapon in the perpetration of the sexual assault that results in the enhancement of the crime from an offense of the second degree to one of the first degree.[2]

In order for a jury to find beyond a reasonable doubt that a defendant is guilty of aggravated sexual assault, it must find (1) that there was sexual penetration; (2) that the defendant was armed with a weapon; and (3) that the defendant threatened the victim by word or gesture with use of the weapon.

Our review of the record discloses that a jury could find beyond a reasonable doubt that the three essential elements of the offense were established in this case. There is no question that sexual penetration occurred. From the record, one could find that at some point prior to the sexual act, defendant, a man much larger and older than the victim, had a gun. It also is established by the record that, "He pointed it [the gun] at me [Evelyn] but he ain't shot me." And in response to the question, "Well, he was threatening you?," Evelyn answered,

---

[2]The Code of Criminal Justice repealed the general enhancement statute found in pre-Code law, but provides for increased penalties for specific crimes when perpetrated while armed. (See, *e.g., N.J.S.A.* 2C:15-1b, elevating robbery from second to first degree if the actor was armed; *N.J.S.A.* 2C:18-2b(2), designating burglary as a second degree crime rather than third degree if a weapon is used.) *N.J.S.A.* 2C:14-2a(4) is in accord, designating a sexual assault as "aggravated" if a weapon is employed. *See Final Report of the New Jersey Criminal Law Revision Commission, Volume II: Commentary* 190, which states, "the extreme punishment of a crime of the first degree is reserved for situations which are the most brutal or shocking, evincing the most dangerous aberration of character and threat to public security \* \* \*."

"Something like that." Moreover, it is established that the defendant placed the gun on the shelf under the table next to the couch on which the attack took place. According to Evelyn, defendant "put the gun up under there where I was laying there and then from there that's how everything started."

■ Thus, it is uncontroverted that a sexual penetration occurred, that defendant was armed with a gun, and that he pointed the gun at Evelyn. There is no doubt that the pointing of a gun is a threatening gesture under *N.J.S.A.* 2C:14–2a(4). The circumstances permit the inference that these acts were committed with the requisite culpability. *N.J.S.A.* 2C:2–2b(2), c(3).

■ Although, due to Evelyn's limited intelligence and the traumatic experience that she had sustained, she was unable to testify precisely as to the chronological sequence of events, we conclude that a jury could reasonably infer beyond a reasonable doubt, from all testimony adduced at trial, that defendant threatened her with the gun shortly before the sexual assault. Certainly, the statute does not require an attacker to be holding the weapon and threatening the victim during the actual sexual penetration.

■ Moreover, although we need not reach this point to find the statutorily required "threat," we believe that a jury could reasonably infer that the imminent presence of the gun with which her attacker, a larger and older man, had threatened her posed a continual threat to the small fourteen-year-old girl. Having been placed beneath the table next to where she withstood a sexual attack, the gun was easily accessible and remained a constant threat. The gesture of placing the gun in such a location provides additional support for the finding of a threat.

The short time (one hour) the jury deliberated indicates that the jury had scant doubt about the defendant's guilt. Neither do we. We agree with the trial court and the jury that viewing

the State's evidence in its entirety and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences, a reasonable jury could find defendant guilty of aggravated sexual assault beyond a reasonable doubt.

Furthermore, we find the Appellate Division's reliance on *State v. Christener*, 71 *N.J.* 55 (1976), to be misplaced as the facts of that case are distinguishable from those of the case at bar. In *Christener*, we were concerned with those cases in which a trial court instructs a jury on a more serious offense when no evidence is adduced at trial to support such a charge and the jury renders an intermediate verdict as a compromise position. Such is not the case facing this Court. As indicated by the testimony at trial, there was sufficient evidence from which a "jury could reasonably find the defendant guilty of that offense beyond a reasonable doubt." *Christener, supra,* 71 *N.J.* at 66.

Moreover, the trial court in *Christener* had instructed the jury on the elements of a more serious offense than that upon which a verdict was ultimately returned by the jury. We reversed that conviction because we found that there existed "a real possibility that the jury could have found the defendant not guilty," and the instruction on the more serious offense led to a compromise verdict rather than to an acquittal. *Id.* 71 *N.J.* at 69. Quite unlike the *Christener* case, in which the jury might have felt compelled to reach an intermediate position, the charge on the more serious offense in the case at bar did not result in a compromise verdict. The jury found defendant, Martinez, guilty of the first degree offense of aggravated sexual assault as charged after deliberating for only one hour. Therefore, *Christener* is inapposite and its reasoning inapplicable.

For the reasons set forth above, the judgment of the Appellate Division is reversed and the conviction and sentence imposed by the trial court are reinstated.

SCHREIBER, J., concurring.

I concur fully in Justice Garibaldi's opinion, except for a reservation concerning her discussion of *State v. Christener*, 71 *N.J.* 55 (1976). The *Christener* Court was sharply divided. I considered the majority's reasoning to be unsound and my conviction remains the same.

SCHREIBER, J., concurring in the result.

*For reversal*—Chief Justice WILENTZ and Justice CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For affirmance*—None.