624 A.2d 975

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
CHARLES THOMAS, DEFENDANT–APPELLANT.

Argued February 2, 1993—Decided May 25, 1993.

*Bernadette N. De Castro,* Assistant Deputy Public Defender, argued the cause for appellant (*Zulima V. Farber,* Public Defender, attorney).

*Maryann K. Lynch,* Assistant Prosecutor, argued the cause for respondent (*James F. Mulvihill,* Acting Essex County Prosecutor, attorney).

*Nancy A. Hulett,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*Robert J. Del Tufo,* Attorney General, attorney).

The opinion of the Court was delivered by

STEIN, J.

Defendant, Charles Thomas, was convicted of possession of cocaine with intent to distribute within 1,000 feet of school

property, in violation of *N.J.S.A.* 2C:35–7. The issue presented in this appeal is whether the State produced sufficient evidence for a jury to conclude that the school property was "used for school purposes." A divided panel of the Appellate Division affirmed the conviction, the dissenting member concluding that the State had failed to sustain its burden of proof. 256 *N.J.Super.* 563, 572–74, 607 *A.*2d 997 (1992). The appeal comes to this Court as of right. *R.* 2:2–1(a)(2).

Although the trial evidence included by stipulation a map "depicting the location and boundaries of the area on or within 1,000 feet of any property used for school purposes," as authorized by *N.J.S.A.* 2C:35–7, the jury was not instructed that the map presumptively established that the school property depicted thereon was "used for school purposes." We undertake in this opinion to elaborate on the manner in which the statutorily-authorized map may be used to prove the elements of the school-zone offense. *Infra* at 253–58, 624 *A.*2d at 978–80. Nevertheless, we agree with the conclusion reached by the Appellate Division majority that the evidence in the record was sufficient to permit the jury to "infer that a school [was] used for school purposes," 256 *N.J.Super.* at 571, 607 *A.*2d 997, and therefore affirm the judgment below.

## I

In October 1987, Detectives Schneider and Donnellen of the Newark Police Department were on patrol in the vicinity of the Madison Avenue School. They stopped their vehicle alongside a jacked-up Toyota with its front tires spinning in reverse. Two men, later identified as defendant and Calvin Black, were in the front seats. Detective Schneider walked to the front-passenger door of the Toyota. He testified that he had seen in plain view various items in the vehicle that he had recognized as paraphernalia used to package drugs. A search of the vehicle uncovered nine tinfoil packages, which were later tested and found to contain cocaine. The detectives arrested defendant and Black.

Defendant was indicted for several offenses, including possession of cocaine with intent to distribute within 1,000 feet of school property, contrary to *N.J.S.A.* 2C:35–7. At trial, defense counsel stipulated to the admissibility of a "1000′ drug free zone map," which the prosecution then offered into evidence. The prosecutor questioned Detective Schneider about the map:

Q. Officer, I am going to show you * * * what has been marked S-5 and placed in evidence. Do you know what that is, Officer?

A. Yes. This is a map indicating where the schools are in the City of Newark and this portion of the City of Newark would be 1,000 feet radius of the school which is marked with a circle.

Q. Could you mark on this map where the defendant's automobile was located when you made the arrest?

A. Right here. That would be 799 S. 15th Street.

Q. Is there a school in the area of that?

A. Yes. Well, within a thousand feet would be Madison Avenue School.

Q. How do you know that's within 1,000 feet?

A. It is within the perimeter of the circle which indicates 1,000 feet.

Defendant testified, disputing his presence in the Toyota and denying that he had possessed drugs with the intent to distribute. Defendant's testimony did not address whether the Toyota was located within 1,000 feet of Madison Avenue School or whether that school was being used for school purposes.

Defendant was convicted of the school-zone offense. The Appellate Division upheld the conviction, concluding that the map, which was properly in evidence, and the officer's testimony had established that the possessory offense had occurred within 1,000 feet of a school, and that the existence of the school created a "permissive inference" that the school was used for school purposes. 256 *N.J.Super.* at 567–68, 607 *A.*2d 997. "Accordingly, [the] question [was] for the jury to resolve." *Id.* at 572, 607 *A.*2d 997.

The dissenting judge expressed the view that the "mere presence of a school building" cannot establish the "use[ ] for school purposes" element of the crime. *Id.* at 574, 607 *A.*2d 997. Quoting *State v. Ivory*, 124 *N.J.* 582, 592, 592 *A.*2d 205 (1991), the dissent concluded that the State was required to present "evidence 'to establish that such property is regularly,

consistently, and actually "used for school purposes" and not merely owned by an educational entity.'" *Ibid.* Accordingly, the dissenting member would have reversed the conviction "[b]ecause such evidence [was] absent from this record [and] an essential element of the offense was not proved * * *." *Ibid.*

## II

That a defendant may not be convicted of an offense except on proof beyond a reasonable doubt of each element of that offense is a fundamental principle of our criminal jurisprudence. *In re Winship,* 397 *U.S.* 358, 90 *S.Ct.* 1068, 25 *L.Ed.*2d 368 (1970); *State v. Corbitt,* 74 *N.J.* 379, 405, 378 *A.*2d 235 (1977) (Pashman, J., dissenting), *aff'd,* 439 *U.S.* 212, 99 *S.Ct.* 492, 58 *L.Ed.*2d 466 (1978). That constitutional imperative arises out of a defendant's right to due process of law and "is a prime instrument for reducing the risk of convictions resting on factual errors." *In re Winship, supra,* 397 *U.S.* at 363, 90 *S.Ct.* at 1072, 25 *L.Ed.*2d at 375. Our Legislature has incorporated that basic requirement in the Code of Criminal Justice, *N.J.S.A.* 2C:1–13a.

The burden of establishing each element of the offense remains with the State. *See Mullaney v. Wilbur,* 421 *U.S.* 684, 95 *S.Ct.* 1881, 44 *L.Ed.*2d 508 (1975) (holding that State bears burden in murder case of proving that defendant did not act in heat of passion); *State v. Grunow,* 102 *N.J.* 133, 144–45, 506 *A.*2d 708 (1986) (same). Requiring that the State bear and discharge that burden is essential to the protection of a defendant's basic constitutional rights. *Mullaney, supra,* 421 *U.S.* at 704, 95 *S.Ct.* at 1892, 44 *L.Ed.*2d at 522 (due process); *State v. Ingenito,* 87 *N.J.* 204, 214–15, 432 *A.*2d 912 (1981) (trial by jury); *State v. McCandless,* 190 *N.J.Super.* 75, 81, 461 *A.*2d 1205 (App.Div.1983) (right to remain silent).

*N.J.S.A.* 2C:35–7 was enacted to "create[ ] a drug 'safety zone' around schoolyards." Official Commentary to the Comprehensive Drug Reform Act (Laws 1987, Chapter 106), 9

*Crim. J.Q.* 149, 157 (1987). That statute prohibits the possession of a controlled dangerous substance with intent to distribute within 1,000 feet of school property used for school purposes. *N.J.S.A.* 2C:35-7. In *Ivory, supra,* we explained that the statute contemplated a "two-pronged inquiry," 124 *N.J.* at 587, 592 *A.*2d 205, the first focusing on whether the property constitutes "school property," and the second on whether the property is "used for school purposes." *Ibid.* Thus, "use for school purposes" is an essential element of the offense, and the State bears the burden of establishing that element by proof beyond a reasonable doubt.

As originally enacted, the school-zone statute offered no guidance regarding the type of proof that could be offered to establish that property was used for school purposes. In 1988, the Legislature amended the statute and authorized municipalities and counties to produce a map "for the purpose of depicting the location and boundaries of the area on or within 1,000 feet of any property used for school purposes which is owned by or leased to any elementary or secondary school or school board * * *." *L.* 1988, *c.* 44; *N.J.S.A.* 2C:35-7. Significantly, the amendment also provided that the map "shall constitute prima facie evidence of the location and boundaries of [the 1,000–foot areas surrounding school property used for school purposes]." *Ibid.* Two prerequisites to such prima-facie use exist: (1) the map must be properly authenticated; and (2) "the municipality or county [must have] adopted a resolution or ordinance approving the map as official finding [sic] and record of the location and boundaries of the area or areas on or within 1,000 feet of the school property." *Ibid.*

*N.J.S.A.* 2C:35–7 thereby creates a presumption that the prosecution may invoke by producing a map adopted pursuant to the statute's provisions. "Generally speaking, a presumption is an evidentiary device that enables 'the trier of fact to determine the existence of an element of the crime—that is, an "ultimate" or "elemental" fact—from the existence of one or

more "evidentiary" or "basic" facts.'" *State v. Ingram,* 98 *N.J.* 489, 495, 488 *A.*2d 545 (1985) (quoting *Ulster County Court v. Allen,* 442 *U.S.* 140, 156, 99 *S.Ct.* 2213, 2224, 60 *L.Ed.*2d 777, 791 (1979)). To be constitutional, the elemental fact must bear a rational connection, in terms of logical probability, to the evidentiary fact. *See Ingram, supra,* 98 *N.J.* at 497–98, 488 *A.*2d 545; *see also State v. Humphreys,* 54 *N.J.* 406, 412–16, 255 *A.*2d 273 (1969); *State v. DiRienzo,* 53 *N.J.* 360, 370–77, 251 *A.*2d 99 (1969). Additionally, although presumptions are generally understood to be "compulsory and *prima facie* establish[ ] the fact to be true," *State v. Corby,* 28 *N.J.* 106, 114, 145 *A.*2d 289 (1958), to pass constitutional muster the presumption must remain permissive in criminal cases. *Ingram, supra,* 98 *N.J.* at 498, 488 *A.*2d 545; *see also Sandstrom v. Montana,* 442 *U.S.* 510, 516–18, 99 *S.Ct.* 2450, 2455–56, 61 *L.Ed.*2d 39, 46–47 (1979) (stating that mandatory presumptions impermissibly shift burden of persuasion to defendant). Thus, a statute that provides that one fact is prima facie proof of another should be understood to create a "permissive inference," enabling jurors to "draw the conclusion [or to reject it], depending upon how they view the impact of the proof." *Corby, supra,* 28 *N.J.* at 114, 145 *A.*2d 289 (describing presumption as "a mandatory deduction" and inference as "a permissive deduction"); *see also State v. Stasio,* 78 *N.J.* 467, 484–85, 396 *A.*2d 1129 (1979) (stating that jury may interpret phrase "prima facie" as having binding effect), *superseded by statute on other grounds, N.J.S.A.* 2C:2–8.

In *Ingram, supra,* we observed that in criminal cases involving statutory presumptions and inferences, "[o]rdinarily, final concern will focus on the specific instructions that are given to the jury." 98 *N.J.* at 499, 488 *A.*2d 545. The shift from the statute to the jury instructions occurs for two reasons. First, as discussed above, the statutory presumption must not be couched in mandatory terms, but should be presented to the jury "in terms of inferences which may or may not be drawn from a fact, the jury being at liberty to find the ultimate fact

one way or the other." *Stasio, supra,* 78 *N.J.* at 485, 396 *A.*2d 1129. Second, the statutory presumption has no substantive effect independent of the jury instruction. R. Biunno, *Current N.J. Rules of Evidence,* comment on *Evid.R.* 15 (1993); *cf. Ulster County Court, supra,* 442 *U.S.* at 168–69, 99 *S.Ct.* at 2230–31, 60 *L.Ed.*2d at 799 (Powell, J., dissenting) (describing purpose of presumptions as providing guidance to jurors in considering evidence). Jurors cannot perform their function without drawing inferences, because trial evidence invariably requires that an inference be drawn from some fact to the ultimate proposition to be proved. *State v. Mucci,* 25 *N.J.* 423, 431, 136 *A.*2d 761 (1957). The significance of a statutory presumption is that "[t]hrough the use of [the] presumption[ ], certain inferences are commended to the attention of the jurors * * *." *Ulster County Court, supra,* 442 *U.S.* at 169, 99 *S.Ct.* at 2231, 60 *L.Ed.*2d at 799 (Powell, J., dissenting).

The prosecution need not rely on the statutory presumption. The school-zone statute allows the prosecution to use any other evidence to establish that the school property was used for school purposes. *N.J.S.A.* 2C:35–7. When the prosecution does not rely on the statutory presumption, a reviewing court assessing a challenge to the sufficiency of the evidence must ask

"whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt."

[*State v. Martinez,* 97 *N.J.* 567, 571–72, 483 *A.*2d 117 (1984) (quoting *State v. Reyes,* 50 *N.J.* 454, 459, 236 *A.*2d 385 (1967).]

An inference reasonably may be drawn when "it is more probable than not that the inference is true; the veracity of each inference need not be established beyond a reasonable doubt in order for the jury to draw the inference." *State v. Brown,* 80 *N.J.* 587, 592, 404 *A.*2d 1111 (1979). Of course, the State must still be held to its burden of proving each element of the offense beyond a reasonable doubt, and that burden may

not be shifted to the defendant. *See Martinez, supra,* 97 *N.J.* at 572, 483 *A.*2d 117; *Brown, supra,* 80 *N.J.* at 592, 404 *A.*2d 1111.

### III

To establish that the school property was used for school purposes, the State produced a "1000' drug free zone map," but the State did not produce an adopting ordinance or resolution. We are aware that such an ordinance existed, that ordinance being the subject of a motion to expand the record brought by the State. We recognize that the State's omission may have been attributable to defense counsel's stipulation to the map's admissibility. A stipulation ordinarily obviates the need for authenticating the document. R. Biunno, *supra,* comment 1 on *Evid.R.* 67. The better practice would have been to produce the adopting resolution or ordinance even though defense counsel had stipulated to the map's admissibility.

In any event, we need not decide whether the record should be expanded to include the ordinance because the statutory inference that may be drawn from a conforming map was not invoked. In the course of its charge, the trial court read the text of *N.J.S.A.* 2C:35–7 to the jury, instructing the jury that it could not convict defendant unless it concluded that the State had proven each of the essential elements of the offense beyond a reasonable doubt. One such element was that at the time of the offense the school property had been used for school purposes. However, the court's instruction did not include any reference to the presumptive effect of the drug-free zone map. Specifically, the court did not charge the jury that it could infer from the map that the property depicted was in fact school property used for school purposes. Thus, contrary to defendant's contention, no risk existed that the statutory inference would take on a mandatory effect because the jury simply was not apprised of the inference, and, in that respect, defendant's constitutional rights could not have been compromised.

See *Humphreys, supra,* 54 *N.J.* at 414–16, 255 *A.*2d 273 (reversing conviction where court instructed jury that possession in car was "presumptive evidence" of possession of weapon found in car); *DiRienzo, supra,* 53 *N.J.* at 376–77, 251 *A.*2d 99 (affirming conviction for possession of stolen goods when court instructed jury that possession of such goods within one year of theft authorizes conviction but does not require it).

Because the statutory presumption is not implicated, we must determine whether, viewing the record in its entirety, and giving the State the benefit of all favorable testimony and inferences, a jury could find beyond a reasonable doubt that the property had been used for school purposes. *Martinez, supra,* 97 *N.J.* at 571–72, 483 *A.*2d 117. Defendant asserts, relying on *Ivory, supra,* that to establish that the property was used for school purposes the State must provide evidence that "such property is regularly, consistently, and actually 'used for school purposes * * *.' " 124 *N.J.* at 592, 592 *A.*2d 205. Defendant argues that the State failed to do so, and that therefore his conviction must be overturned.

In *Ivory,* the police arrested the defendant as he rode his bicycle in Count Basie Park, a public park that the Red Bank Board of Education owned and leased to the Borough of Red Bank. Red Bank Catholic High School had entered into an agreement with the Borough to use an athletic field in Count Basie Park, such use being "no less than [its] current use of the Athletic Field." *Id.* at 584, 592 *A.*2d 205. Other organizations and individuals used the field for non-school-related recreational activities. *Ibid.*

The issue in *Ivory* was "whether the Legislature intended that properties like Count Basie Park be included in the definition of the 'safety zones' it established around 'school property used for school purposes.' ". *Id.* at 587, 592 *A.*2d 205. We observed that a violation of *N.J.S.A.* 2C:35–7 required both proof that the subject property constituted "school property" and that the property was used for school purposes. With

respect to the second prong, "use for school purposes," we stated:

> Because a title, lease, or analogous "Participation and Contribution Agreement" will sometimes establish only the first prong, we must occasionally look for other indicia of actual use to satisfy the second prong. In most cases, like that of a school itself, or playgrounds immediately adjacent to the school, use "for school purposes" will be self-evident. * * *
>
> Other situations involving less-immediately identifiable property uses may prove more ambiguous. In such cases, the courts could look to other evidence such as published schedules, newspaper accounts, photographs and the like to establish that such property is regularly, consistently, and actually "used for school purposes" and not merely owned by an educational entity.

### [*Id.* at 591–92, 592 *A.*2d 205.]

The issues implicated in *Ivory* are not present here. As we observed, "In most cases, like that of a school itself, * * * use 'for school purposes' will be self-evident." *Id.* at 591, 592 A.2d 205. Unlike *Ivory*, the evidence produced concerning Madison Avenue School was unambiguous and uncontroverted. The "1000′ drug free zone map" offered by the State depicted school property labeled "MA," and Detective Schneider, who had been a member of the Newark Police Department for nine years, testified that that property was the Madison Avenue School. Based on the drug-free zone map and Detective Schneider's uncontradicted testimony that defendant's offense had been committed within 1,000 feet of Madison Avenue School, we concur in the conclusion reached by the Appellate Division majority that "as a matter of common experience, a school is used for school purposes. The inferred fact, use of property for school purposes, reasonably flows from the fact already established, the existence of a school." 256 *N.J.Super.* at 569–70, 607 *A.*2d 997.

That school buildings occasionally are converted to other uses or are closed does not alter our determination concerning the sufficiency of the evidence to support the jury's verdict. No evidence presented at trial suggested that the Madison Avenue School had ceased to be operational, nor is the State obligated to disprove every contingency to sustain its burden. It need

produce evidence sufficient for a jury to conclude beyond a reasonable doubt only that the Madison Avenue School was used for school purposes. We are satisfied that the State has met that burden.

## IV

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.