**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5379-17

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

GUILIO MESADIEU, a/k/a
GUILIO MESUDIEU, JASON
PIERRE, JOSEPH PIERRE,
GUILIO MESDIEU, GUILIO
MASADIEU, EMMANUEL
MERVALUS, EMMANUEL
MERVILUS, and EMMANUEL
MERVUILUS,

     Defendant-Appellant.

_____

Submitted December 2, 2020 – Decided August 20, 2021

Before Judges Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment Nos. 16-06-0373 and 16-06-0375.

Joseph E. Krakora, Public Defender, attorney for appellant (John P. Flynn, Assistant Deputy Public Defender, of counsel and on the briefs).

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Michele C. Buckley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the briefs).

PER CURIAM

After the trial court denied Giulio Mesadieu's motions to suppress evidence and to disclose a confidential informant's identity, a jury found him guilty of unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1), and being a certain person not to possess firearms, N.J.S.A. 2C:39-7(b)(1). Mesadieu appeals from his convictions, and from his aggregate sentence: a term of ten years with a five-year period of parole ineligibility. He raises the following points for our consideration:

> POINT I
>
> THE SUPPRESSION MOTION SHOULD HAVE BEEN GRANTED BECAUSE THE POLICE PROLONGED THE TRAFFIC STOP FOR THE DRUG SNIFFS WITHOUT REASONABLE SUSPICION.
>
> A. The Drug Investigation and Dog Sniffs Added Time to the Duration Reasonably Necessary to Address the Traffic Infractions.
>
> B. Because the Police Corroborated Only Innocent and Easy-To-Know Details of the [Confidential Informant's] Tip, the State Failed to Establish That the [Confidential Informant] had an Adequate Basis of

2

Knowledge to Support Reasonable Suspicion that Mesadieu Possessed Drugs.

POINT II

THE SUPPRESSION MOTION SHOULD HAVE BEEN GRANTED BECAUSE OFFICERS UNCONSTITUTIONALLY CONDUCTED A DE FACTO ARREST WITHOUT PROBABLE CAUSE WHEN THEY REMOVED MESADIEU FROM HIS CAR WITH GUNS DRAWN, FRISK[E]D HIM, THREATENED TO SEIZE HIS CAR, AND CONFINED HIM IN A POLICE CAR. (Not raised below).

POINT III

BY DENYING MESADIEU'S MOTION TO DISCLOSE THE IDENTITY OF THE [CONFIDENTIAL INFORMANT], WHILE ALSO ALLOWING THE STATE TO ELICIT TESTIMONY THAT THE POLICE HAD A SEARCH WARRANT FOR MESADIEU'S CAR AND HAD A LEGITIMATE REASON TO BELIEVE THAT MESADIEU POSSESSED DANGEROUS CONTRABAND, THE TRIAL COURT UNFAIRLY RESTRICTED MESADIEU'S CONSITUTIONAL RIGHT TO PRESENT A COMPLETE DEFENSE. (Partially raised below).

POINT IV

THE MATTER SHOULD BE REMANDED FOR RESENTENCING BECAUSE THE COURT IMPOSED THE MAXIMUM SENTENCE ON THE CERTAIN PERSONS OFFENSE DESPITE THE PRESENCE OF MITIGATING FACTORS IN THE RECORD, AND BECAUSE THE COURT RAN THE

3

SENTENCE CONSECUTIVELY TO A SENTENCE ON ANOTHER INDICTMENT WITHOUT CONSIDERING THE FAIRNESS OF THE AGGREGATE TERM OF IMPRISONMENT.

SUPPLEMENTAL POINT[1]

THE TRIAL COURT COMMIT[T]ED PLAIN ERROR BY CONTRADICTING THE BEYOND-A-REASONABLE-DOUBT STANDARD AND INSTRUCTING THAT THE JURORS COULD CONVICT IF THEY INFERRED THAT POSSESSION WAS "MORE PROBABLE THAN NOT." (Not raised below).

We affirm Mesadieu's conviction, but remand for reconsideration of his sentence.

## I.

We turn first to the suppression issue, and assume the reader's familiarity with the suppression-hearing testimony of Elizabeth Police Detective Jose Martinez and Union County Sheriff's Officer (and canine handler) Brian Frew, which the trial court reviewed at length in its written opinion. In brief, police seized Mesadieu's unlawfully possessed handgun after stopping him for motor-vehicle violations. But the stop was no coincidence. Police had followed Mesadieu because a reliable confidential informant told them that Mesadieu,

---

[1] We permitted an extra round of briefing to allow defendant to add this point.

who often carried a handgun (and was presently out on bail on a weapons-possession charge), would that day transport heroin in his Dodge Ram truck (one of several vehicles he drove). After police stopped Mesadieu, removed him from his truck and patted him down, they called for a drug-sniffing dog. The canine arrived thirteen minutes later and indicated the presence of drugs in the truck. Armed with that fact, the police obtained a warrant to search the truck. The parties do not dispute that the subsequent search uncovered a handgun.

The trial court held that police lawfully stopped Mesadieu because they had reasonable suspicion of motor-vehicle violations. Specifically, they observed Mesadieu turn suddenly at a corner without signaling and, shortly thereafter, bolt across several lanes of traffic to reach an exit, almost causing an accident. Applying State v. Dunbar, 229 N.J. 521 (2017), the court also held that the police did not unlawfully prolong the stop beyond the time necessary to complete the traffic mission. The court noted that when the canine arrived, police had not finished "issuing a traffic citation, checking the defendant's credentials, and ensuring that there were no outstanding warrants." Additionally, the court found that Mesadieu diverted the officers from their traffic-related tasks by pacing back and forth along a busy highway and shouting

at the officers, forcing Martinez to place Mesadieu in a patrol car (though without handcuffs) for his safety.

And the court provided a second rationale for the prolonged stop, holding that even if the traffic mission was an insufficient justification, "specific and articulable suspicion that the defendant possessed narcotics" warranted Mesadieu's continued detention until the canine arrived. Several factors supported that suspicion: a reliable confidential informant alerted police that Mesadieu would be transporting heroin in his Dodge Ram; Mesadieu drove erratically before the stop; he was irate while interacting with police; police observed a large amount of cash in the truck; Mesadieu was "a known drug dealer" to Martinez; and Mesadieu was already facing a gun-possession charge.

Without challenging the initial traffic stop, Mesadieu presents a two-fold argument regarding his prolonged detention. First, he argues that the police unlawfully extended the stop longer than the traffic-related mission required. Second, he contends that the tip and other relevant circumstances failed to create the non-traffic-related suspicion needed to prolong the stop. We agree on the first point, but not the second.

"A seizure justified only by a police-observed traffic violation . . . 'become[s] unlawful if it is prolonged beyond the time reasonably required to

6

complete th[e] mission' of issuing a ticket for the violation." Rodriguez v. United States, 575 U.S. 348, 350-51 (2015) (alterations in original). Beyond issuing a ticket, an officer's traffic mission may include checking the driver's license, inspecting the vehicle's registration and proof of insurance, and ascertaining if there are warrants for the driver's arrest. Rodriguez, 575 U.S. at 355; see Dunbar, 229 N.J. at 533. In other words, a dog sniff is lawful if it occurs while the officer is issuing a ticket, checking the driver's license, or otherwise performing the traffic-related mission.

But an officer may not delay completing the traffic mission to obtain a dog sniff. "The critical question . . . is not whether the dog sniff occurs before or after the officer issues a ticket . . . ." Rodriguez, 575 U.S. at 357. The issue is whether the stop is prolonged — and there is no de minimis exception for minor delays. Id. at 356-57.

Although we defer to a motion judge's fact-findings if substantial credible evidence in the record supports them, see State v. Elders, 192 N.J. 224, 243-44 (2007) (describing standard of review of suppression orders), here, we discern no proof that police were unable to complete the traffic mission before the canine arrived. Martinez did not explain why it took him so long to write tickets, especially given that within minutes, at least eight other officers were on the

scene. Rather than diligently pursue the traffic mission, Martinez evidently focused on his drug investigation. He stated he was "waiting for the canines" — not writing tickets — when he spotted the envelope of cash. Nor did he establish why he would have needed time to verify Mesadieu's identity and perform a warrant check. Mesadieu was in his sights for months. Martinez had even pulled Mesadieu's motor-vehicle information to confirm his identity with the confidential informant. Finally, although Mesadieu's behavior prompted Martinez to seat him in the patrol car, Martinez did not clarify how much time that interaction consumed.

In sum, although Martinez evidently did not complete the traffic-related mission before the canine unit arrived, the State failed to prove that the police used only "the time reasonably required to complete" that mission. See Rodriguez, 575 U.S. at 350 (emphasis added); Dunbar, 229 N.J. at 534.[2]

But even so, Mesadieu's detention was lawful. "[I]f, as a result of the initial stop or further inquiries, 'the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden [the] inquiry and satisfy

---

[2] We will not give the State a second chance to establish the chronology of events. Although the Supreme Court in Dunbar remanded to enable the court to make findings on the "'critical question' of whether the canine sniff prolonged the traffic stop," the Court had just adopted a new standard, id. at 540. Here, there is no new standard.

those suspicions.'"  Dunbar, 229 N.J. at 533 (second alteration in original) (quoting State v. Dickey, 152 N.J. 468, 479-80 (1998)).  Put another way, "[I]f an officer has articulable reasonable suspicion independent from the reason for the traffic stop that a suspect possesses narcotics, the officer may continue a detention to administer a canine sniff."  Id. at 540.

Ultimately, the totality of circumstances supported a reasonable and articulable suspicion that Mesadieu possessed drugs or a gun.  See State v. Davis, 104 N.J. 490, 504 (1986) (stating that a court must "evaluate the totality of circumstances surrounding the police-citizen encounter" "to determine the lawfulness of a given seizure").  The informant's tip was the strongest basis for that suspicion — but by the time the motor-vehicle stop transformed into a narcotics-or-gun-related stop, the police had more than just a tip.  See State v. Golotta, 178 N.J. 205, 213 (2003) ("An informant's tip is a factor to be considered when evaluating whether an investigatory stop is justified.").  For that reason, we are not constrained by cases Mesadieu cites scrutinizing narcotics-related stops that were based solely on a confidential informant's tip.

Although we need not find that the confidential informant's tip was enough to suspect that Mesadieu committed non-traffic-related offenses, the tip was strong evidence indeed.  A court assesses a tip by considering "closely

intertwined" factors: the tip's veracity, its reliability, and the tipster's basis of knowledge. Illinois v. Gates, 462 U.S. 213, 230 (1983); State v. Stovall, 170 N.J. 346, 362 (2002). Here, all three factors substantiate the tip's value.

Regarding the first two factors, Martinez's confidential informant had proved his truthfulness and reliability.[3] Over a nine- to twelve-month span, he gave Martinez information leading to twelve arrests involving various drug and weapons offenses. In each of those cases, he accurately predicted the contraband that police found. He also provided details about Mesadieu that Martinez confirmed, including Mesadieu's nickname, his address, the vehicles he drove, and his past possession of firearms. Additionally, the informant correctly described Mesadieu's physical appearance and affirmatively identified him from a photograph.

Regarding the informant's basis of knowledge, we do acknowledge that at the suppression hearing, Martinez did not say how the informant obtained his information.[4] Nonetheless, five minutes after the informant flagged down

---

[3] Although Martinez sometimes used "he or she" to avoid identifying the informant's gender, we will assume, solely for convenience, that the informant was male.

[4] During the hearing on the search-warrant application, Martinez stated that the informant had at some point conversed with Mesadieu.

10

Martinez to tell him that Mesadieu would soon transport heroin in his Dodge Ram, Martinez saw Mesadieu driving that vehicle. Details like these establish an informant's basis of knowledge by "predict[ing] . . . hard-to-know future events" and showing "that the informant's knowledge has been derived from a trustworthy source." See State v. Williams, 364 N.J. Super. 23, 34-35 (App. Div. 2003).

In a case much like the one before us, the Court held that the police established reasonable suspicion based on a confidential informant's tip. State v. Birkenmeier, 185 N.J. 552, 561 (2006). The informant in Birkenmeier "had previously provided information that led to two 'major' drug and weapons seizures and two arrests"; furthermore, the informant "provided particularized information," including "defendant's name[,] . . . address[, and] . . . physical description; the make, model, and license tag number of defendant's car; the fact that defendant would be leaving his home at 4:30 p.m. to make a marijuana delivery; and the fact that defendant would be carrying the drugs in a laundry tote bag." Ibid. The police subsequently "observed defendant leaving his home at 4:30 p.m., carrying a laundry tote bag, and driving away in the car" that the confidential informant described. Ibid. Except for information about a

container Mesadieu would use, Martinez's informant's tip was as detailed as the one in <u>Birkenmeier.</u>

And the tip was not all Martinez had to go on; three other sets of facts reinforced the basis for suspicion. First, Mesadieu drove erratically and evasively after Martinez made a U-turn and started following him. Specifically, Mesadieu abruptly turned left at an intersection without signaling, and once on the highway, he moved to the left-most lane — and then moved to the exit lane so suddenly that other cars had to brake to avoid a collision. Mesadieu's erratic and evasive driving contributed to a reasonable suspicion that he was violating more than just the rules of the road. <u>Cf.</u> <u>State v. Pineiro</u>, 181 N.J. 13, 26 (2004) (stating that flight, "in combination with other circumstances[,] . . . may support reasonable and articulable suspicion").

Second, Martinez also knew that Mesadieu had a criminal history and was free on bail on a weapons charge.[5] That knowledge thickened the stew of suspicion. <u>See</u> <u>State v. Privott</u>, 203 N.J. 16, 28-29 (2010) (holding that officer's knowledge "that defendant was associated with violent gangs" contributed to

---

[5] Martinez did not detail that history at the suppression hearing. However, he told the judge considering his search-warrant application that he knew that Mesadieu had six prior convictions, including several for possession of drugs with intent to distribute.

reasonable and articulable suspicion justifying investigatory stop); State v. Valentine, 134 N.J. 536, 547 (1994) ("[A]n officer's knowledge of a suspect's prior criminal activity in combination with other factors may lead to a reasonable suspicion that the suspect is armed and dangerous.").

Third, Mesadieu hesitated after Martinez commanded him to exit his truck. See State v. Gamble, 218 N.J. 412, 431-32 (2014) (stating that driver's hesitancy to leave his vehicle contributed to reasonable suspicion). And finally, after Mesadieu did step out of the vehicle, he acted erratically. He paced back and forth behind his truck; he called Martinez a liar; he "rant[ed] and rav[ed]," claiming Martinez was setting him up; and he demanded to speak to Internal Affairs. Of course, a citizen who believes that police have violated his or her rights may become understandably irate and threaten to register a complaint. But "[f]acts that might seem innocent when viewed in isolation can sustain a finding of reasonable suspicion when considered in the aggregate." State v. Nishina, 175 N.J. 502, 511 (2003). A police officer, under the circumstances here, would have been justified in suspecting that Mesadieu's protests were a calculated effort to deter the officers.[6]

---

[6] Martinez also discovered a large amount of cash while waiting for the canine. That discovery could well have aroused suspicions of drug-dealing. However,

The totality of these factors and the confidential informant's tip were sufficient to create a reasonable and articulable suspicion of a drug- or weapons-related crime, which justified prolonging the stop until the canine arrived.

## II.

Mesadieu's remaining arguments challenging his conviction do not warrant extensive discussion. We need not address his newly minted argument that the police, without probable cause, de facto arrested him. "Parties must make known their positions at the suppression hearing so that the trial court can rule on the issues before it." State v. Witt, 223 N.J. 409, 418-19 (2015) (reversing Appellate Division decision that reached newly minted argument that stop was unlawful). When a defendant holds an issue for appeal, he or she deprives the State of the opportunity to marshal evidence to meet it. Id. at 419.

In any event, the exclusionary rule bars only admission of evidence "come at by exploitation" of police illegality. Wong Sun v. United States, 371 U.S. 471, 487-88 (1963) (quoting Maguire, Evidence of Guilt 221 (1959)). And the gun was not the fruit of the alleged "arrest." It was, instead, the fruit of the

---

because of the uncertain chronology, we cannot consider the cash in the totality of circumstances. If there had been no other suspicious indications, the stop might already have been unreasonably prolonged by the time Martinez found the cash.

subsequent search warrant, which was the fruit of the dog sniff during the investigative stop. The police would have seized the gun whether Mesadieu was sitting in the police car or pacing along the highway.

We also reject Mesadieu's argument that the court erred when it refused to disclose the confidential informant's identity, but permitted the state to elicit testimony that police had a warrant to search Mesadieu's truck.

Mesadieu alleges that disclosure of the informant's identity would have enabled him to challenge the informant's credibility and "the officers' credibility with respect to how they acted based on the [informant's] tip," thus bolstering his defense that the police planted the gun (which, a DNA expert testified, had DNA traces that matched Mesadieu's DNA). Alternatively, Mesadieu contends a disclosure order could have demonstrated that the informant did not exist at all.

Such arguments are rank speculation and fail to satisfy the prerequisites for overcoming the informant's privilege. See State v. Milligan, 71 N.J. 373, 392 (1976) (rejecting as speculative defendant's claim that informant would impeach State police witness); State v. Adim, 410 N.J. Super. 410, 435-36 (App. Div. 2009) (affirming denial of disclosure where "an informer does not testify and was not involved in the crime").

And the court did not abuse its discretion by allowing testimony that the police had a warrant to search Mesadieu's truck. Such testimony helped "to dispel any preconceived notion that the police acted arbitrarily." See State v. Cain, 224 N.J. 410, 435 (2016). Furthermore, the testimony did not prejudice Mesadieu; the court provided an appropriate and immediate limiting instruction that we presume the jury understood and followed. See State v. Marshall, 148 N.J. 89, 240 (1997) ("[A] properly instructed jury will not presume guilt based on the issuance of a search warrant").

We reject, too, Mesadieu's contentions that Martinez's references to "local criminals" (which the court struck from the testimony) and "a narcotics investigation" (as to which the court gave a curative instruction) poisoned the jurors' minds, particularly given that the phrase "local criminals" did not refer to Mesadieu in the first place.

Finally, we reject Mesadieu's argument, raised as a matter of plain error, that the trial judge lowered the beyond-a-reasonable-doubt standard of proof by instructing the jury it could infer, if it found such an inference more probable than not, that because Mesadieu was the sole occupant of the vehicle in which the police found the handgun, he possessed the gun.

Consistent with the model jury charge, see Model Jury Charges (Criminal), "Possession of Firearms, Weapons, Destructive Devices, Silencers or Explosives In A Vehicle (N.J.S.A. 2C:39-2)" (approved Mar. 1993), the judge instructed:

> I have previously instructed you concerning your consideration of circumstantial evidence presented in this case. That is, you may infer a fact from other facts in the case if you find it more probable than not that the inferred fact is true.
>
> Evidence has been presented that a handgun was found in a vehicle. If you find Mr. Mesadieu was the sole occupant of the vehicle, you may infer that this occupant possessed the handgun. You are never required or compelled to draw any inference. It is your exclusive province to determine whether the facts and circumstances shown by the evidence support any inference and you are always free to accept or reject them, if you wish.
>
> If you find that the state has failed to prove any of the elements of the crime beyond a reasonable doubt, your verdict must be not guilty. On the other hand, if you are satisfied that the state has proven all the elements of the crime beyond a reasonable doubt, your verdict must be guilty.

We find no basis in this instruction for Mesadieu's argument that the judge "allow[ed] the jurors to find that Mesadieu was the sole occupant of [the] car based on a preponderance of the evidence." Nor did the judge instruct the jury,

as Mesadieu claims, that it could find the possession element of the crime by "a mere preponderance of the evidence."

The instruction conformed to our decision in State v. Bolton, 230 N.J. Super. 476, 480 (App. Div. 1989), in which we stated that, to implement N.J.S.A. 2C:39-2 without shifting the burden away from the State, "the jury may be advised that it can draw an inference if it finds it more probable than not that the inference is true." See also Cnty. Ct. v. Allen, 442 U.S. 140, 167 (1979) (stating, in firearms-possession prosecution, that there was "no more reason to require a permissive statutory presumption to meet a reasonable-doubt standard before it may be permitted to play any part in a trial than there is to require that degree of probative force for other relevant evidence before it may be admitted"); State v. Thomas, 132 N.J. 247, 256 (1993) (stating that a jury may draw inferences when such inferences are more probably true than not); State v. Brown, 80 N.J. 587, 592 (1979) ("[A] jury may draw an inference from a fact whenever it is more probable than not that the inference is true; the veracity of each inference need not be established beyond a reasonable doubt . . . .").

It is true that "the State must still be held to its burden of proving each element of [an] offense beyond a reasonable doubt." Thomas, 132 N.J. at 256. But an inference charge "reduce[s] the burden of persuasion below a 'reasonable

doubt' standard" "only if the jury were <u>compelled</u> to draw the inference and convict on th[at] basis . . . alone." <u>State v. Humphreys</u>, 54 N.J. 406, 415 (1969) (quoting <u>State v. DiRienzo</u>, 53 N.J. 360, 376 (1969)); <u>see also</u> <u>Allen</u>, 442 U.S. at 167 (stating that it must be made "clear that the presumption is not the sole and sufficient basis for a finding of guilt").

Here, the judge told the jury it was "never required or compelled to draw any inference." Furthermore, the DNA evidence provided additional proof that Mesadieu possessed the gun. <u>Cf.</u> <u>Brown</u>, 80 N.J. at 593 (stating that, when more than one person was present, a jury may not infer possession unless there is evidence other than mere presence). Finally, the court repeatedly instructed the jury that the State had to prove each element of the crime beyond a reasonable doubt. We may assume that the jury followed those instructions. <u>State v. Ross</u>, 229 N.J. 389, 415 (2017). Therefore, we find no error, let alone plain error, in the court's instruction.

## III.

Although we affirm Mesadieu's convictions, we remand for the court to reconsider his sentence. The court found aggravating factors three, six and nine, N.J.S.A. 2C:44-1(a)(3) (risk of reoffending), (6) (prior criminal record and prior offenses' seriousness), and (9) (need to deter defendant and others); and

mitigating factor two (which the court gave "minimum . . . weight"), N.J.S.A. 2C:44-1(b)(2) ("defendant did not contemplate that" his "conduct would cause or threaten serious harm"), and it imposed an eight-year term with a forty-two-month parole-ineligibility period for the unlawful-possession-of-a-handgun conviction, concurrent with a ten-year term with a five-year parole-ineligibility period for the certain-persons offense.[7]  Regarding the latter, the judge stated she felt a "little more constrained" due to "the mandatory five[-]year parole ineligibility."

First of all, the court's eight-year sentence with a forty-two-month parole-ineligibility period violated N.J.S.A. 2C:43-6(c), which required the court to impose a parole-ineligibility period of "one-half of the sentence imposed . . . or 42 months, whichever is greater."  To comply with the statute and preserve the eight-year term, the court should have imposed a forty-eight-month parole-ineligibility term.  But if the court's goal was to impose a forty-two-month parole-ineligibility term, then the sentence should have been no more than seven

---

[7]  In its oral sentencing decision, the court apparently also found factor one, N.J.S.A. 2C:44-1(b)(1) ("[t]he defendant's conduct neither caused nor threatened serious harm").  The judge stated, "I am giving a slight weight to the mitigating factor that in this case that he did not cause nor threaten serious harm in this matter."  However, the judgments of conviction stated that the court only found mitigating factor two.  The court should clarify its finding on remand.

years. We remand for the court to reconsider its sentence for the unlawful-possession-of-a-handgun conviction.

And, because of the judge's comment about being "constrained," we also remand for the court to reconsider the sentence for the certain-persons conviction. On remand, the court should be aware that it need not impose a ten-year sentence, although it must impose five years of parole ineligibility. N.J.S.A. 2C:43-6(c).

To the extent not addressed, defendant's arguments lack sufficient merit to warrant written discussion. R. 2:11-3(e)(2).

Affirmed as to the conviction; remanded for resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5379-17