755 A.2d 1245

STATE OF NEW JERSEY, IN THE INTEREST
OF L.W., JUVENILE–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted July 24, 2000—Decided August 4, 2000.

Before Judges STEINBERG and LEFELT.

*Ivelisse Torres*, Public Defender, attorney for appellant (*Jodi L. Ferguson*, Assistant Deputy Public Defender, of counsel and on the brief).

*Fred J. Theemling, Jr.*, Hudson County Prosecutor, attorney for respondent State of New Jersey (*Erinn M. Batcha*, Assistant Prosecutor, on the brief).

The opinion of the court was deliver by

STEINBERG, J.A.D.

L.W. appeals from an adjudication of delinquency for an act which, if committed by an adult, would have constituted second-degree robbery, *N.J.S.A.* 2C:15–1. At a disposition hearing, L.W. was placed into the Juvenile Intensive Supervision Program for a maximum period of eighteen months. Appropriate monetary penalties were also imposed. Without retaining jurisdiction, we reverse and remand for further findings of fact and conclusions of law.

According to the State's proofs, on January 25, 1999, the victim, A.V.R., a student at Ferris High School in Jersey City, was leaving school with his girlfriend, K.M., when he heard someone call his name. He looked back to see who had called him and noticed V.J., L.W.'s co-defendant, on his left side, and L.W. and three or four other people on his right. V.J. asked the victim if he had a dollar. The victim told V.J. that he did not have a dollar and kept on walking. The victim then heard V.J. say "cap the shit out of him." At that point, L.W. punched the victim in the mouth. According to the victim, he sustained a black eye, his eye "was broken", his lip was cut, and his teeth were "pushed back." After L.W. struck the victim, V.J. and L.W. continued walking away.

On cross-examination, the victim conceded that no one attempted to "go into [his] pockets" or "backpack."

K.M. testified that she heard V.J. ask the victim for a dollar and also heard the victim say he did not have a dollar. K.M. further stated "that V.J. told the others to hit the victim, and they did." She said L.W. was the first one to hit the victim and the others then circled the victim "and they all started to hit him." She said one of them struck her on the right side of her head. After the incident, she testified that L.W., V.J. and the others walked away.[1]

On this appeal, L.W. raises the following arguments:

POINT I THE JUVENILE'S ADJUDICATION ON THE ROBBERY CHARGE IS CONSTITUTIONALLY DEFICIENT AND MUST BE VACATED BECAUSE THE STATE FAILED TO OFFER PROOF BEYOND A REASONABLE DOUBT THAT THE JUVENILE EITHER COMMITTED A THEFT OR AN ATTEMPTED THEFT AGAINST [A.V.R.]; THEREFORE, THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S MOTION FOR A JUDGEMENT OF ACQUITTAL. *U.S. CONST.* AMENDS. V, XIV; *N.J CONST.* (1947) ART. I, PAR. 10.

■ In finding L.W. guilty, the judge made the following findings:

The [inaudible] fact is not whether the comments with respect to the dollar are properly characterized as a request or a demand or an instruction to produce the dollar, but . . . what happened in the totality of all of the circumstances.

\* \* \*

I find that there was a request made by [V.J.] for a dollar that— that when that request was denied by [A.V.R.], [V.J.] directed the others who were present with him and, including [L.W.], to cap [A.V.R.]. That the others, including [L.W.], then proceeded to assault [A.V.R.] to the point where his lip was broken and two of his teeth were pushed in, that he was bleeding. That the inspiration for that assault was clearly to consummate the transfer of the dollar which [A.V.R.] had indicated was not going to be coming forth voluntarily.

---

[1] L.W. was charged in a two-count complaint. The first count alleged a robbery of K.M. The second count alleged a robbery committed upon the victim. At the close of the State's case, the judge, pursuant to *R.* 3:18–1, granted L.W.'s motion for a judgment of acquittal regarding the charge filed on behalf of K.M.

That that does make the force and it was used here. Force supplied in the course of a theft even though no theft was eventually consummated. And the intervention of the friend led to [A.V.R.'s] leaving the scene and first going to his house and then eventually to the medical center for medical attention.

I'm satisfied that the State has proven beyond a reasonable doubt all of the required elements of a robbery under *N.J.S.A.* 2C:15-1, namely, that in the course of committing a theft, there was bodily injury inflicted on [A.V.], that [L.W.] is the person who—of the people at least who actually inflicted that bodily injury.

It is, of course, well-settled that a defendant may not be convicted of an offense except on proof beyond a reasonable doubt of each element of that offense. *In re Winship,* 397 *U.S.* 358, 362, 90 *S.Ct.* 1068, 1071, 25 *L.Ed.*2d 368, 374 (1970); *State v. Thomas,* 132 *N.J.* 247, 253, 624 *A.*2d 975 (1993). Moreover, the burden of establishing each element of the offense beyond a reasonable doubt is upon the State. *Mullaney v. Wilbur,* 421 *U.S.* 684, 704, 95 *S.Ct.* 1881, 1892, 44 *L.Ed.*2d 508, 522 (1975); *State v. Thomas, supra,* 132 *N.J.* at 253, 624 *A.*2d 975. Indeed our Legislature has incorporated that constitutional provision by providing that "[n]o person may be convicted of an offense unless each element of such offense is proved beyond a reasonable doubt." *N.J.S.A.* 2C:1-13(a).

Regarding robbery, our Code of Criminal Justice provides, in pertinent part as follows:

A person is guilty of robbery if, in the course of committing a theft, he:

(1) Inflicts bodily injury or uses force upon another; or

(2) Threatens another with or purposely puts him in fear of immediate bodily injury; or

(3) Commits or threatens immediately to commit any crime of the first or second degree.

An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in an immediate flight after the attempt or commission.

[*N.J.S.A.* 2C:15-1(a).]

■ Thus, here, the State was required to prove beyond a reasonable doubt that L.W., while in the course of committing a theft, either inflicted bodily injury or used force upon the victim, or threatened the victim with or purposely put him in fear of immediate bodily injury. Under either theory, the State was also

required to establish beyond a reasonable doubt that L.W. was in the course of committing a theft. To some extent, under the facts of this case, the concepts blend since V.J.'s request for a dollar could only constitute a theft if it was unlawful. *N.J.S.A.* 2C:20–3(a). A mere request for money, without more, is not criminal. However, it becomes unlawful if the actor either inflicts bodily injury or uses force upon the victim, or threatens the victim with or purposely puts the victim in fear of immediate bodily injury in order to cause the victim to relinquish his money or other property.

We disagree with the judge's initial observation that whether the comments with respect to the dollar are characterized as a request, demand, or an instruction to produce the dollar, is of no consequence. On the contrary, we conclude that the critical issues are whether L.W. was acting in concert with V.J. and the others, and whether he purposely put the victim in fear of immediate bodily injury if the victim did not give V.J. the dollar. No special words or conduct are required to constitute a threat or to purposely put someone in fear of immediate bodily injury. *State v. Smalls,* 310 *N.J.Super.* 285, 292, 708 *A.*2d 737 (App.Div. 1998). The totality of the circumstances must be considered in determining if defendant's purpose was to put the victim in fear of immediate bodily injury. *Ibid.* A prerequisite for a robbery conviction is a theft or attempted theft. *State v. Farrad,* 164 *N.J.* 247, 253, 753 *A.*2d 648 (2000). Consequently, L.W. could only have been found guilty if, by his actions, along with the others, it was his purpose to put the victim in fear of immediate bodily injury if he did not provide a dollar. Stated another way, the State was required to prove, beyond a reasonable doubt, that by his conduct, L.W. purposely put the victim in fear of immediate bodily injury in order to coerce the victim into relinquishing a dollar.[2] Moreover,

---

[2] We are satisfied that if the judge so found beyond a reasonable doubt, L.W. would be guilty as a principal, although he did not personally request the dollar. In the event the State proceeded under a theory of accomplice liability, the State would have had to have proven beyond a reasonable doubt that L.W. shared in

the assault upon the victim cannot make the incident a robbery unless it was committed in the course of committing a theft. On this record, particularly in light of the initial remarks made by the judge, we cannot conclude whether he found, beyond a reasonable doubt, that defendant, by his conduct, along with the others, purposely put the victim in fear of immediate bodily injury in the course of committing or attempting to commit a theft.

We recognize that the version of *R.* 1:7–4(a) in existence at the time of the trial only required a judge in a juvenile action to make a general finding unless a request had been made for specific findings of fact. However, here, we conclude that fact-finding was necessary to evaluate what elements the judge considered, just as instructions are reviewed in a jury trial to determine legal error. *State v. Smith,* 253 *N.J.Super.* 145, 147, 601 *A.2d* 247 (App.Div. 1992).[3]

The failure of the judge to articulate his findings regarding the elements of the offense is critical because it appears as if he was mistaken with respect to them when he stated that whether defendant's conduct constituted a request, demand or instruction was of no consequence. Moreover, we conclude that in a criminal, quasi-criminal, or juvenile bench trial, a judge should not only make specific findings of fact regarding elements of the offense, but should also state whether he considered lesser-included offenses, specifically identifying those he considered. Only if that is done, can there be effective appellate review. We note however, that the judge need not articulate detailed, subjective analyses of

the intent necessary for the commission of the offense, which is the crime's basic element, and at least indirectly participated in the commission of the criminal act. *State v. Norman,* 151 *N.J.* 5, 31–32, 697 *A.2d* 511 (1997); *State v. Bielkiewicz,* 267 *N.J.Super.* 520, 527–30, 632 *A.2d* 277 (App.Div.1993).

[3] We note that effective September 5, 2000, *R.* 1:7–4(a) will be amended to require the court to find the facts and state its conclusions of law in all actions tried without a jury that are appealable as of right. There will be no distinction between civil actions and criminal, quasi-criminal, or juvenile actions tried without a jury.

factors such as demeanor and appearance to support credibility on each and every witness. *State v. Locurto,* 157 *N.J.* 463, 474–75, 724 *A.*2d 234 (1999).

Accordingly, without retaining jurisdiction, we vacate the adjudication and remand for findings of fact and conclusions of law. Since we do not now find insufficient evidence to sustain the adjudication, there are no jeopardy consequences precluding such a remand. *State v. Smith, supra,* 253 *N.J.Super.* at 149, 601 *A.*2d 247.[4]

---

[4] On remand, we suggest that the judge and the parties consider the appropriateness of aggravated assault and simple assault as potential lesser-included offenses. Although those issues were tangentially argued at trial, they have not been briefed or argued on appeal and, consequently, we decline to consider them.