# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4364-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANDREW J. PLURA,

     Defendant-Appellant.

_____

Argued May 26, 2021 – Decided June 17, 2021

Before Judges Whipple, Rose and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 17-08-0139.

Douglas R. Helman, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Douglas R. Helman, of counsel and on the briefs).

Daniel Finkelstein, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Daniel Finkelstein, of counsel and on the briefs).

PER CURIAM

Following a violation of probation (VOP) hearing, defendant Andrew J. Plura was found guilty of failing to comply with court-imposed restrictions on his internet access and failing to report to his probation officer on March 13, 2018 and June 25, 2018. Defendant now appeals from a March 1, 2019 judgment of conviction (JOC). Defendant seeks to vacate the VOP, the three-year extension of his probationary term, and the internet restriction. Defendant does not attack his guilty plea to the underlying charge or seek to withdraw it. Nor does he argue his original sentence or his VOP sentence was illegal.

Defendant presents the following points for our consideration:

POINT I

A NEAR-BLANKET BAN ON USING THE INTERNET AS A CONDITION OF PROBATION IS UNCONSTITUTIONAL.
(Not raised below).

> [A]. The internet ban facially violates the First Amendment because it is overbroad, and this is true even though the ban is a condition of probation, not of parole or [Community Service for Life (CSL)].
>
> [B]. The internet ban is further unenforceable as applied to [defendant] because the condition is vague, it is not "reasonable" under the probation statute, and it is disconnected from [defendant]'s original offense.

2

BY FAILING TO PRESERVE THE IMAGES THAT PREMISED [DEFENDANT]'S PROBATION VIOLATION, THE STATE VIOLATED HIS DUE PROCESS RIGHTS. THE VIOLATION SHOULD HAVE BEEN DISMISSED.

In his reply brief, defendant further contends:

POINT I

[DEFENDANT] DID NOT WAIVE HIS CHALLENGE TO THE UNCONSTITUTIONAL INTERNET BAN IN THIS MATTER.

POINT II

[DEFENDANT] ALSO CHALLENGES THE PROBATION VIOLATION FOR HIS PURPORTED FAILURE TO APPEAR.

Because we reject defendant's constitutional and reasonableness challenges to the internet restrictions he negotiated with the State as a condition of his initial probationary term, we affirm defendant's VOP as it pertains to his failure to comply with those restrictions. But we remand for the VOP court to set forth its reasons for imposing an employment-only internet restriction on the VOP sentence – or to consider alternatives that are not unduly restrictive of defendant's liberty while preventing re-offense and protecting the public. In addition, we reverse the VOP court's determination that defendant failed to

3                                                                    A-4364-18

report on March 13, 2018, and remand for further proceedings as to defendant's alleged failure to report on June 25, 2018.

## I.

We set forth the procedural history in some detail to give context to the VOP court's decision. In August 2017, defendant was charged in a one-count State Grand Jury indictment with third-degree endangering the welfare of a child by possessing 100 or more items of child pornography, N.J.S.A. 2C:24-4(b)(5)(b). Pursuant to a negotiated agreement with the State, defendant pled guilty to "possessing less than 100 images" which overcame the presumption of incarceration.[1] During his plea allocution, defendant admitted he "viewed certain images on the internet" that "depicted children under the age of eighteen engaging in sexually explicit acts" on diverse dates between October 18, 2016 and March 4, 2017.

---

[1] As enacted when defendant was charged with the present offense, N.J.S.A. 2C:24-4(b)(5)(b) classified all possession of child pornography as a third-degree offense and included a presumption of imprisonment for possession of 100 or more items of child pornography. In 2017, the Legislature amended subparagraph (b), adding three sub-subparagraphs to enhance penalties dependent upon the number of child pornography images possessed. N.J.S.A. 2C:24-4(b)(5)(b)(i) to (iii); see also L. 2013, c. 141; New Jersey Senate Committee Statement, S.B. 3219 (2017). Relevant here, the presumption of imprisonment for possession of 100 or more items remains in effect.

A-4364-18

The State also agreed to recommend a two-year noncustodial probationary term, with certain conditions. Pertinent to this appeal, defendant "agree[d] to limit his internet access to communicating with family and friends, or anything that has to do with school or work." Defendant's guilty plea did not include registration under Megan's Law or parole supervision for life (PSL). In exchange, defendant agreed not to appeal his sentence. According to the trial court, that meant: "[W]hile [defendant] ha[d] a right to file an appeal, the State ha[d] a right to take this deal back, and we'd go back to the beginning."

On March 2, 2018, the same judge sentenced defendant pursuant to the terms of the plea agreement, with one notable exception. Without explanation, the court restricted defendant's "computer" access to "employment use only." Neither defendant nor his assigned counsel[2] objected to the conditions imposed.

On the day of sentencing, defendant signed the "New Jersey Judiciary Standard Conditions of Adult Probation" form. On April 9, 2018, he signed Attachment A to that form, entitled: "Special Conditions of Probation for Internet Access and Supervision Pursuant to N.J.S.A. 2C:45-1." Among other provisions, defendant's special probation conditions included "the monitoring of

---

[2]  The attorney assigned to represent defendant at the sentencing hearing was not the public defender who represented defendant at the plea hearing.

 A-4364-18

[his] computer and/or electronic device activity by a probation officer and/or computer/device specialist through the use of electronic means." Another condition – handwritten on the form – indicated defendant further agreed that his "[c]omputer access [was] limited to employment only." The conditions closely tracked the requirements set forth in N.J.S.A. 2C:45-1(d)(2).

Defendant did not appeal from his conviction or sentence. Nor did he seek clarification or modification of the conditions of probation imposed by the sentencing court.

On July 12, 2018 – four months after he was sentenced – Probation Officer Andrea Perez formally charged defendant with violating his probation by failing to: (1) comply with the internet restriction imposed by the sentencing court; (2) pay certain financial obligations; and (3) report to his probation officer on March 13, 2018 and June 25, 2018. During the February 22, 2019 VOP hearing before another judge, Perez testified regarding her personal observations of the images on defendant's phone, and defendant's two alleged missed probation meetings. Because Perez acknowledged defendant was current on his financial obligations, the State withdrew the second charge. Defendant neither testified nor presented any documentary evidence on his behalf.

6

According to Perez, defendant failed to report for their initial meeting on March 12, 2018 but reported the following day. The State did not ask Perez why she issued a charge for defendant's failure to report on March 13, 2018.

Perez also told the court defendant failed to report on June 25, 2018. But on cross-examination, Perez acknowledged the notation, "T.C." on defendant's probation card indicated he called the probation office. She could not, however, recall whether defendant "called in . . . or called to say he wasn't coming." Perez "couldn't recall exactly what [defendant] said [on] the telephone call, just that there was a telephone call on that day."

At each monthly meeting with defendant, Perez reviewed the standard rules and regulations of probation and the special internet conditions. Perez monitored the employment-only internet[3] restriction during office visits by: "accessing defendant's phone, [and] looking through files to see if there was [sic] any internet access or images on the phone"; defendant's self-reporting; and remotely accessing computer monitoring software installed on defendant's phone.

---

[3] The parties and the Law Division used the terms "internet" and "computer" interchangeably.

A-4364-18

During a July 9, 2018 office visit, Perez searched defendant's cellphone and found "[n]ine images of questionably-aged females baring one or both naked breasts." Defendant told Perez "he did a search for small breasts in the Pinterest application."[4]

Law enforcement officers inspected the images but could not determine the ages of the females depicted. Using a Kodak digital camera, Perez photographed the images that were downloaded to defendant's cellphone and returned the phone to him without deleting the images. The probation department later deleted the images from the digital camera because, among other reasons, defendant was not criminally charged with possessing the images.

Following closing arguments, the VOP court issued a decision from the bench. The court credited Perez's testimony as clear, concise, and reasonable. The court found defendant was aware of his probationary terms and conditions, which required him to report and limited his internet access to employment purposes. Based on those facts, the court concluded the State proved by a preponderance of evidence that defendant failed to comply with the internet

---

[4] According to its website: "Pinterest is a visual discovery engine for finding ideas like recipes, home and style inspiration, and more." All About Pinterest, Pinterest, https://help.pinterest.com/en/guide/all-about-pinterest (last visited June 4, 2021).

restrictions imposed as a condition of probation and "failed to report on March 13, 2018." The court did not, however, make any findings regarding defendant's failure to report on June 25, 2018. However, the VOP JOC reflects that the State proved defendant violated probation by failing to report on both dates.

Reweighing the same aggravating and mitigating factors as those that were assessed by the sentencing court, the VOP court imposed an additional probationary term of three years and continued, without elaborating, "[a]ll previously imposed conditions and terms of probation." Defendant neither objected to the conditions imposed nor otherwise moved to reduce the employment-only internet restriction imposed by the VOP court. Defendant appealed from his VOP sentence. At his request, we transferred the matter from an excessive sentence calendar to our plenary calendar.

II.

For the first time on appeal, defendant raises a constitutional challenge to the employment-only internet restriction imposed as a condition of probation on his original sentence. Defendant contends the restriction is both "facially unconstitutional as overbroad" under the First Amendment to the United States Constitution and unenforceable as applied to him because it is vague, unreasonable, and "disconnected" from his underlying offense. Accordingly,

defendant contends his VOP and extended probationary term on the first charge must be vacated and the internet restriction excised from his original probationary term.

Although not expressly argued as such, defendant's assertions implicate the legality of the sentences imposed by both the trial and VOP courts. "We usually refer to an 'illegal' sentence in terms of one which is not consistent with the dictates of the controlling statute, although a defendant can also challenge a sentence because it was imposed without regard to some constitutional safeguard or procedural requirement." State v. Tavares, 286 N.J. Super. 610, 618 (App. Div. 1996).

"A defendant may challenge an illegal sentence at any time." State v. Zuber, 227 N.J. 422, 437 (2017). Accordingly, we are not persuaded by the State's argument that defendant waived his right to challenge the internet restriction by failing to appeal his initial sentence. We therefore consider defendant's constitutional challenges on the merits.

Our review of an illegal sentence is de novo. See State v. Nance, 228 N.J. 378, 393 (2017). Likewise, our interpretation and the constitutionality of a statute involve questions of law that we review de novo. See State v. Robinson, 217 N.J. 594, 603-04 (2014). Because defendant failed to raise his constitutional

challenges before the trial or VOP court, however, we apply the plain error standard.  See State v. Singh, 245 N.J. 1, 13 (2021); see also R. 2:10-2.

When imposing a sentence of probation, a court "shall attach such reasonable conditions . . . as it deems necessary to insure that [the defendant] will lead a law-abiding life or is likely to assist him to do so."  N.J.S.A. 2C:45-1(a).  Pursuant to subsection (b) of the statute, a court "may require the defendant" to satisfy various conditions, including those that are "reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience."  N.J.S.A. 2C:45-1(b)(12).  The court may also impose "Internet[-]access conditions" as set forth in subsection (d)(2).  The list is not exhaustive.  See, e.g., N.J.S.A. 2C:45-1(c) to (e).  But the conditions must "conform[] with contemporary standards of decency, . . . not [be] grossly disproportionate to the offense and [be] reasonably related to a legitimate penological objective."  State v. Krueger, 241 N.J. Super. 244, 256 (App. Div. 1990).

To prevail on a VOP, the State must prove by a preponderance of the evidence that the defendant has "inexcusably failed to comply with a substantial requirement imposed as a condition of probation."  State v. Reyes, 207 N.J. Super. 126, 135 (App. Div. 1986).  Essentially, the question a court must decide

11

is whether a violation of a condition of probation has occurred and whether the violation is serious enough to justify revocation of probation. State v. Baylass, 114 N.J. 169, 175 (1989).

On resentencing after a violation of probation, the court is not required to impose a sentence in accordance with the initial plea agreement because "the original plea agreement does not survive a violation of probation." State v. Frank, 280 N.J. Super. 26, 40 (App. Div. 1995). "Thus, to determine the appropriate terms of the resentence, the judge refers to the sentencing scheme provided in the Code for the crime to which defendant originally pled guilty rather than the terms of the sentence agreed upon by defendant in the plea agreement." State v. Sepulveda, 253 N.J. Super. 447, 451 (App. Div. 1992) (citing State v. Ervin, 241 N.J. Super. 458, 465-70 (App. Div. 1989)); see also N.J.S.A. 2C:45-3(b) (permitting a resentencing court on a revocation of probation to "impose on the defendant any sentence that might have been imposed originally for the offense of which he was convicted"). Moreover, on resentencing, the judge "should view [the] defendant as he stands before the court on that day." State v. Randolph, 210 N.J. 330, 354 (2012).

Against that legal backdrop, we first consider defendant's challenge to the internet ban imposed by the sentencing court as it relates to his VOP. Although we are not revisiting the original sentence, we note the court departed from the internet restriction negotiated by the parties – that permitted defendant's internet access to communicate with defendant's friends or "anything" related to defendant's employment or school – without explanation. We also recognize in limiting defendant's "computer access to employment use only," the sentencing court generally cited N.J.S.C. 2C:45-1, without referencing a subsection or subparagraph.

Defendant generally argues the sentencing court imposed the employment-only internet ban under subparagraphs (a) and (d) of N.J.S.A. 2C:45-1(d)(2). Under those subparagraphs a court "may" impose internet-access conditions that

> (a) Prohibit the person from accessing or using a computer or any other device with Internet capability without the prior written approval of the court, except the person may use a computer or any other device with Internet capability in connection with that person's employment or search for employment with the prior approval of the person's probation officer; [and]
>
> . . . .

(d) Require the person to submit to any other appropriate restrictions concerning the person's use or access of a computer or any other device with Internet capability.

A statute is presumed valid. State v. Lenihan, 219 N.J. 251, 266 (2014). "As the party challenging the constitutionality of a statute, [a] defendant bears the burden of establishing its unconstitutionality." Id. at 265. "The first step of a facial challenge to a law on the basis of overbreadth and vagueness is determining whether the enactment reaches a substantial amount of constitutionally protected conduct." State v. R.K., 463 N.J. Super. 386, 401 (App. Div. 2020). "The challenge fails if it does not." Id. at 402. As our Supreme Court has cautioned, "whenever possible, [courts] should avoid interpreting a legislative enactment in a way that would render it unconstitutional." State v. Fortin, 198 N.J. 619, 630 (2009).

To support his overbreadth challenge to N.J.S.A. 2C:45-1(d)(2), defendant primarily relies on Packingham v. North Carolina, ___ U.S. ___, 137 S. Ct. 1730, 1733-34, 1738 (2017) (invalidating a statute that banned all registered sex offenders from accessing social networking websites); J.I. v. New Jersey State Parole Bd., 228 N.J. 204, 229 (2017) (overturning a "near total" parole ban on internet use because it was not "reasonably tailored to advance the goals of rehabilitation or public safety"); R.K., 463 N.J. Super. at 411, 416-17

(reversing the imposition of a parole regulation banning social networking as a condition of CSL because it violated the parolee's constitutional free speech where his underlying conviction did not implicate the internet and less-restrictive means were available); and K.G. v. New Jersey State Parole Bd., 458 N.J. Super. 1, 36, 45 (App. Div. 2019) (vacating PSL conditions that restricted certain internet access where the parolees had not used the internet to commit their underlying offenses and the Parole Board failed to advance a "significant public safety concern to justify these conditions"). Defendant also cites various federal and out-of-state cases.

Notably, none of the authority cited by defendant implicates internet restrictions imposed as a discretionary condition of probation under any subsection of N.J.S.A. 2C:45-1. Further, contrary to defendant's contentions, N.J.S.A. 2C:45-1(d)(2)(a) is not applicable because defendant did not need Perez's approval to search the internet for employment purposes. And we are not convinced N.J.S.A. 2C:45-1(d)(2)(d) is overbroad here, where "any" restriction on internet use imposed under that subsection must be "appropriate." Because imposition of the condition is discretionary and cannot be imposed unless it is appropriate, "the reach" of the subsection does not "extend[] too far."

Town Tobacconist v. Kimmelman, 94 N.J. 85, 125 n.21 (1983); see also State v. Lashinsky, 81 N.J. 1, 15-18 (1979).

Nor are we persuaded by defendant's as-applied constitutional challenge that N.J.S.A. 2C:45-1(d)(2)(a) and (d) are vague or that the internet restriction was otherwise unreasonable. A statute is void for vagueness only "if it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." Lenihan 219 N.J. at 267 (internal quotation marks omitted). A law "that is challenged as vague as applied must lack sufficient clarity respecting the conduct against which it is sought to be enforced." Ibid. (internal quotation marks omitted).

Here, a person of ordinary intelligence would reasonably understand that searching the Pinterest application for small breasts was proscribed by the restriction imposed by the sentencing court, notwithstanding that defendant agreed to a less restrictive condition. While we recognize the sentencing court failed to impose the restriction that was negotiated by the parties, neither the agreed-to condition nor the court-imposed condition permitted defendant to "search for small breasts in the Pinterest application." Notably, defendant does not dispute that, in connection with his agreement to plead guilty to possessing child pornography, he expressly bargained for a sentence that included an

internet restriction that did not permit him to search for such images via Pinterest or any other website.

Moreover, defendant's internet restriction was vastly different from the ban imposed under CSL or PSL over which the parolees had no bargaining power. Accordingly, the cases cited by defendant are factually distinguishable.

As one notable example, the parolee defendant in R.K. was convicted of two separate sex offenses and sentenced to CSL in 2000. 463 N.J. Super. at 393. In 2007, the Parole Board added a ban on use of social media for all CSL parolees, which was codified in 2010. Ibid. Accordingly, in 2011, the defendant was restricted from accessing "sexually-oriented materials." Id. at 394. Thereafter, the defendant was convicted of violating these restrictions by responding to "personal ads" on Craigslist and was sentenced to 364 days in the county jail. Id. at 394-95.

Six years later, the defendant in R.K. filed two separate motions to correct his sentences, arguing they were not authorized by law "because the restrictions [we]re overbroad, vague, and criminalize[d] his protected free speech." Id. at 395. The defendant alternatively argued "the restrictions [we]re unconstitutional as applied to him." Ibid. The trial court denied the motions. Ibid.

We reversed, holding the principles enunciated by the United States Supreme Court in Packingham applied to "social networking bans automatically imposed on new CSL sentences and as a CSL condition of R.K.'s supervised release, making illegal the sentences imposed on R.K. for violating the CSL conditions." Id. at 409-10. Acknowledging the statute in Packingham was distinct from the restriction imposed by the Parole Board, we declared: "From our perspective, the restriction on R.K.'s free speech rights under our federal and state constitutions is the same regardless of the source of governmental restraint – statutory or regulatory supervised release condition . . . ." Id. at 410.

We also concluded the social media restriction was unconstitutional as applied to R.K. Id. at 413. In doing so we recognized that "imposing the social networking restriction on R.K.'s CSL sentence in 2007, which later became the regulatory social networking ban in 2010, violate[d] his constitutional rights of free speech because his sexual offense convictions . . . resulting in his CSL sentence were not related to his use of a social networking website, or even the Internet at all." Id. at 416. The Parole Board's general concern about the recidivism of sexual offender parolees was insufficient to justify the restrictions. Id. at 417.

Conversely, in the present matter, defendant's underlying offense was committed through his use of the internet. Defendant admitted he accessed the internet over a five-month period to view images of children engaged in sexually explicit acts. Unlike the parolee defendant in R.K., defendant expressly agreed to restrict his internet access in exchange for a guilty plea that avoided imprisonment. And unlike the PSL condition in R.K., defendant's internet restriction was limited to his agreed upon two-year probationary term. Under these specific circumstances, we therefore discern no reason to disturb the VOP court's finding that defendant violated the employment-only internet restriction by searching for images of small breasts on the Pinterest application.

We are troubled, however, by the employment-only internet restriction continued by the VOP court, without setting forth its reasons for doing so. Because "the original plea agreement d[id] not survive" defendant's VOP, Frank, 280 N.J. Super. at 40, the VOP court was permitted to impose "any sentence that might have been imposed originally for the offense of which he was convicted," N.J.S.A. 2C:45-3(b).

However, the internet restriction, as all conditions of probation, must be "reasonable." N.J.S.A. 2C:45-1(a). And internet restrictions – at least in the context of CLS – must "serve[] any public-safety, rehabilitative, or other

penological goal." J.I., 228 N.J. at 211. Indeed, we would be remiss if we did not recognize the prevalence of the internet and its importance in our daily lives. Four years ago, Justice Albin commenced the Court's opinion in J.I. by recognizing: "Today, the Internet plays an essential role in the daily lives of most people—in how they communicate, access news, purchase goods, seek employment, perform their jobs, enjoy entertainment, and function in countless other ways." Id. at 210. More recently, we have cited the vital role of the internet in providing access to our State's court system. See D.M.R. v. M.K.G., ___ N.J. Super. ___, ___ (App. Div. 2021) (slip op. at 2).

Moreover, because the plea agreement was terminated, defendant no longer agreed to any restrictions on his internet use. Although his argument in support of continuing probation did not expressly address defendant's internet access, defense counsel told the court that since the time he was violated early in his probationary term, defendant had been compliant "with every single requirement placed upon him subsequently." Defendant completed "a specific sex offender treatment program"; "made all payments"; and "made all reporting dates."

To be clear, before the VOP court, defendant neither argued against the imposition of an employment-only restriction on his internet access nor

otherwise asserted that his constitutional rights of free speech were impeded by the restriction. And defendant never moved before the sentencing or VOP court to lessen the employment-only internet restriction. However, because the VOP court imposed the condition without explanation, we cannot discern on this record whether the restriction was reasonable and served a public-safety, rehabilitative, or other penological goal.

Accordingly, we vacate defendant's VOP sentence and remand for the court to provide a statement of reasons. Defendant may move for less restrictive conditions before the VOP court, which may in its discretion reopen the sentencing hearing. In that case, the VOP court shall view "defendant as he stands before the court on that day." Randolph, 210 at 354.

B.

Little need be said regarding defendant's due process argument. Prior to the VOP hearing, the court denied defendant's ultimate motion to dismiss the first charge for spoliation of evidence.[5] The court rejected defendant's hearsay contentions, concluding instead that the State satisfied the three-part test

---

[5] The judge granted defendant's initial motion to compel discovery of the images before the probation department advised the State that the images had been deleted.

enunciated in <u>State v. Hollander</u>, 201 N.J. Super. 453, 479 (App. Div. 1985).

Pursuant to that test, the trial court must consider:

> (1) whether there was bad faith or connivance on the part of the government; (2) whether the evidence suppressed, lost or destroyed was sufficiently material to the defense; (3) whether defendant was prejudiced by the loss or destruction of the evidence.
>
> [<u>Ibid.</u> (citations omitted); <u>see also</u> <u>State v. Robertson</u>, 438 N.J. Super. 47, 67-68 (App. Div. 2014); <u>Pressler & Verniero</u>, cmt. 3.4 on <u>R.</u> 3:13-3 (2021).]

Applying the <u>Hollander</u> test, the VOP court found: (1) the "State did not act in bad faith because the State had a reasonable explanation as to why [it was] [sic] deleting those images"; (2) "the images [we]re not material because the violation of probation [was not] based on the content of . . . those images; it [wa]s based on the search of the internet" for "other than work purposes"; and (3) "defendant [wa]s not prejudiced by the loss of this evidence because, again, these images [we]re not material or relevant to the violation of probation."

On appeal, defendant reprises his argument that Perez's testimony concerning the images she observed on defendant's cellphone constituted inadmissible hearsay under <u>State v. Mosley</u>, 232 N.J. 169 (2018), and the VOP court erroneously relied on our decision in <u>Hollander</u>. Defendant's reliance on <u>Mosely</u> is misplaced for two reasons: (1) hearsay may be introduced in a VOP

22

hearing if it is sufficiently reliable, 232 N.J. at 189-90; and (2) Perez's testimony was not hearsay. Indeed, Perez testified that she personally discovered the images when she searched defendant's cellphone. Notwithstanding that the images were deleted from the probation department's digital camera, the judge credited Perez's unrefuted testimony about the images.[6] Because the court correctly applied the Hollander factors, we discern no due process violation.

C.

Finally, we turn to the VOP court's decision on defendant's failure to report. Ordinarily, we are not obliged to address a point first raised in a reply brief, in part because the respondent did have the opportunity to properly address it. Borough of Berlin v. Remington & Vernick Eng'rs, 337 N.J. Super. 590, 596 (App. Div. 2001); see also Lenihan, 219 N.J. at 265. Here, however, we granted the State's motion to file a sur-reply brief. Moreover, we do so in the interests of justice. Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J.

---

[6] We decline to consider defendant's reliance on a description of the images that is contained in notes that were not introduced in evidence at the hearing. Inexplicably, defendant's appendix includes this document among others that were not admitted in evidence. Because those documents were not presented to the VOP court for consideration, they are inappropriate for consideration on appeal. See Zaman v. Felton, 219 N.J. 199, 226-27 (2014).

Super. 510, 543 (App. Div. 2009); see also Pressler & Verniero, cmt. 5 on R. 2:6-2 (2021).

The VOP court determined defendant failed to report on March 13, 2018 as charged. Perez testified, however, that defendant reported on that date and failed to report on March 12. The State did not elicit any testimony regarding that disparity. While we decline to consider defendant's belated assertion on reply "that on March 12, [he] asked Perez if they could meet the following day instead, and she complied[,]" we nonetheless conclude the evidence supporting the March 13, 2018 failure to report is insufficient to support that charge and reverse the court's decision.

Regarding defendant's failure to report on June 25, 2018, the trial judge made no findings whatsoever. See R. 1:7-4(a) (requiring the court to "find the facts and state its conclusions of law . . . in all actions tried without a jury"); see also State ex rel. L.W., 333 N.J. Super. 492, 498 n.3 (App. Div. 2000) (noting Rule 1:7-4 applies to criminal case). We therefore vacate the VOP court's decision on the June 25, 2018 charge and remand the matter to the court to make the requisite findings of fact and conclusions of law in accordance with Rule 1:7-4. In doing so, we do not suggest a preferred result, but only that the court reconsider the matter and fulfill its duty to the parties to address the factual and

legal arguments presented as to the June 25 charge. We leave it to the court's discretion as to whether to reopen the testimony.

\* \* \* \*

In sum, we affirm defendant's VOP as it pertains to his failure to comply with the internet restriction imposed by the trial court. But we remand for the VOP court to state its reasons for imposing an employment-only internet restriction and whether that restriction is reasonable and serves any rehabilitative, penological or public-safety goal. The court may open the resentencing hearing upon motion of defendant. We also vacate the court's finding that defendant failed to report on March 13, 2018 but remand for findings of fact and conclusions of law as to defendant's alleged June 25, 2018 failure to report.

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed in part; vacated and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4364-18