**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3561-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

GEORGE T. RODGERS, a/k/a
GARY ADAMS, JEFFREY
REID, and JIM JOHNSON,

     Defendant-Appellant.

_____

Argued October 11, 2023 – Decided December 27, 2023

Before Judges Haas and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 20-11-0618.

Colin Sheehan, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Colin Sheehan, of counsel and on the briefs).

Alexis R. Agre, Assistant Prosecutor, argued the cause for respondent (LaChia L. Bradshaw, Burlington

County Prosecutor, attorney; Alexis R. Agre, of counsel and on the briefs).

Appellant filed a pro se supplemental brief.

PER CURIAM

Tried to a jury, defendant George T. Rodgers was convicted of second-degree robbery, N.J.S.A. 2C:15-1(a)(2), and was sentenced to an extended term of fifteen years pursuant to N.J.S.A. 2C:44-3(a), with an eighty-five percent parole ineligibility term pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

On appeal, defendant presents two points for our consideration:

> POINT I
>
> RODGERS WAS DENIED DUE PROCESS AND A FAIR TRIAL BY THE TRIAL COURT'S FAILURE TO CHARGE THE JURY ON THE CRUCIAL AND CONTESTED ISSUE OF IDENTIFICATION.
>
> POINT II
>
> RODGERS' SENTENCE MUST BE REVERSED AND HIS CASE REMANDED FOR RESENTENCING BECAUSE THE TRIAL COURT: (1) FAILED TO CONSIDER THE RELEVANT MITIGATING FACTORS; AND (2) APPEARS TO HAVE CONSIDERED THE WRONG SENTENCING RANGE.

Defendant's pro se supplemental brief further argues the trial court erred in denying his motion to dismiss the indictment because the State failed to show he threatened another with the purpose to put the person in fear of immediate bodily injury.

We have considered these arguments in light of the record and applicable legal standards and affirm defendant's conviction and sentence.

I.

Defendant was charged with robbing a bank in Bordentown. The State adduced the following facts at trial. Around noon on January 24, 2020, an individual entered the bank and handed the cashier a purple bag imprinted with "Crown Royal" and a note on a white piece of paper that said, "give me the money, no dye bags." The teller complied with the demand, placed $6,779 in cash in the bag and handed it back to the individual, who exited the bank and left on a bicycle.

The teller described the individual as a tall Black man, wearing a black ski mask, light blue hooded sweatshirt, dark gray sweatpants and dark Nike sneakers. Because he wore a ski mask, no one in the bank saw the individual's face or was able to identify defendant as the perpetrator.

Detectives reviewed several surveillance videos around the time and scene of the robbery. Video from a nearby restaurant parking lot showed an individual park a gray Hyundai Santa Fe prior to the robbery. The individual, wearing a ski mask without a mouth hole, exited the vehicle and removed a bicycle from the rear of the vehicle. The individual wore a light blue hooded sweatshirt with a white marking on the left sleeve, a tan shirt underneath, dark gray sweatpants and dark Nike sneakers, and held a white piece of paper in his hands. Surveillance video from a different vantage point showed the Hyundai had a large dent in the hood.

Video after the robbery showed the individual wearing the ski mask return to the vehicle moving more quickly, holding the paper and another dark object in his hands. The individual placed the bicycle in the rear of the vehicle and did not remove the mask until he reentered the vehicle. As he drove out of the lot, the vehicle passed directly in front of an officer who was on the lookout for the perpetrator on a bicycle. The officer's mobile video recorder (MVR) showed the vehicle's rear light was not fully functioning, and also captured part of the vehicle's wheelchair symbol license plate, over which was a cover displaying a car dealership insignia. The MVR also revealed the individual had significant facial hair protruding from his chin.

A-3561-21

Utilizing the vehicle and plate details along with the location of the robbery, detectives conducted a search of the state motor vehicle registry, narrowing possible matches to residences closest to Bordentown. One of the potential vehicles belonged to defendant's father, who lived in Trenton. About six hours after the robbery, detectives arrived at the father's residence to view the vehicle and saw defendant on the street outside the house, standing in front of a gray Hyundai Santa Fe. When defendant went into the house, detectives were able to more closely view the vehicle, which was similar to what had been seen on surveillance video and the MVR. Defendant then came out of the house and left in the vehicle.

Upon executing a motor vehicle stop, officers observed defendant had facial hair on his chin and was wearing gray sweatpants and dark Nike sneakers with markings similar to those seen on the surveillance video. A search of defendant incident to his arrest revealed he had $867 in his wallet.

Detectives then executed search warrants of the vehicle and residence. They located a bicycle, which was propped up by the dining room table, consistent with the one in the video. They found a black ski mask with no mouth hole on the air conditioning unit. Detectives also discovered a tan t-shirt and light blue hooded sweatshirt intertwined with a pair of gloves and a purple

5

"Crown Royal" bag hidden under a mattress in a bedroom. The sweatshirt had a white marking on the left sleeve consistent with the one worn by the individual in the surveillance video. Detectives noticed a ceiling tile in the bedroom was askew, and upon looking in the ceiling area found $4700 in cash.

Defendant was indicted for second-degree robbery and third-degree theft by unlawful taking. A person is guilty of robbery pursuant to N.J.S.A. 2C:15-1(a)(2) "if, in the course of committing a theft, he . . . [t]hreatens another with or purposely puts him in fear of immediate bodily injury." Defendant filed a motion to dismiss the indictment for robbery, arguing there was no evidence that he threatened the bank employees or put them in fear of immediate bodily injury. The judge denied the motion, finding:

> The context of this case is important to consider. The allegation is that the defendant passed a note to a bank teller which read, "give me the money, no dye bags." Most bank tellers are separated from the general public by a protective shield. A grand jury could draw a rational inference from the passing of the note that the defendant's intention was to cause the teller to be fearful of the consequences if the money were not provided. The defendant would not likely have been able to take any money given the existence of the protective shield and therefore the money was given based on an implicit threat of harmful consequences if the demand was not honored. While the teller may have been protected by the protective shield, the teller cannot predict what may have occurred if the money were not given to the defendant. The phrase "or else" is strongly

6

implied following the phrase "give me the money." Additionally, the mentioning of "no dye bags" in the note suggests a level of sophistication on behalf of the defendant which could imply that the defendant had done this before and was someone with whom the teller should not trifle.

The case was then tried before a jury. During the charge conference, the assistant prosecutor requested the judge read the in-court identification jury charge. See Model Jury Charges (Criminal), "Identification: In-Court Identification Only," (rev. July 19, 2012). The judge noted there had been no identification of defendant during the trial—the bank witnesses could not identify defendant as the perpetrator and the law enforcement witnesses only identified defendant as the person they had arrested. The assistant prosecutor asked defense counsel if he agreed with the court's position, to which counsel replied, "I don't think . . ." and then the judge ruled the identification charge was not necessary because there was no in-court identification.

After the jury found defendant guilty of second-degree robbery, the State moved for sentencing as a persistent offender under N.J.S.A. 2C:44-3(a). The court found defendant eligible for an extended term of imprisonment because he was over the age of twenty-one at the time of the robbery and had been convicted on at least two separate occasions of two crimes committed at different times

when he was at least eighteen years old, the latest of which was within ten years of the robbery.

In support of the State's request for an eighteen-year sentence, the assistant prosecutor noted defendant had committed twelve prior indictable offenses and four prior non-indictable offenses. He was previously sentenced to a fourteen-year term of imprisonment with a seven-year parole ineligibility term as a persistent offender in 2012 for second-degree possession of CDS with intent to distribute. Defendant committed the robbery less than a year after his release for the CDS offense. Defense counsel did not contest defendant's eligibility for extended sentencing but requested the court exercise its discretion not to impose it.

In sentencing defendant, the court addressed aggravating and mitigating factors pursuant to N.J.S.A. 2C:44-1(a) and (b). The court found aggravating factor three (the risk that defendant will commit another offense), which was "borne out by the number of convictions he has had" and gave the factor significant weight because "none of those offenses seem to have deterred [defendant] in any way, shape or form." It also found and gave weight to aggravating factor six (the extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted), based on the

prior convictions and in particular the second-degree CDS distribution. The court also found aggravating factor nine (the need for deterring the defendant and others from violating the law) and gave it significant weight because "there is a very, very strong, serious need for [defendant] to understand . . . that there are consequences and penalties for violating the law."

The court did not grant the State's request to find aggravating factor twelve (the defendant committed the offense against a person who the defendant knew or should have known was sixty years of age or older) because, although the bank teller was sixty-nine years old at the time of the robbery, she did not "appear as someone who would noticeably be considered to be someone who was of advanced age," and whether defendant knew her age was "murky." The judge also noted there was no indication defendant chose to approach that particular teller because she "appeared older than her colleagues."

The court did not grant defendant's request to find mitigating factor two (the defendant did not contemplate that his conduct would cause or threaten serious harm), ruling there were no mitigating factors. In light of defendant's background, the court imposed a fifteen-year sentence subject to NERA.

## II.

### A.

We first address defendant's contention the trial court erred in denying his motion to dismiss the indictment. A trial court's denial of a motion to dismiss an indictment is reviewed for an abuse of discretion and should be reversed on appeal only if it clearly appears that the court abused its discretion. State v. Bell, 241 N.J. 552, 561 (2020); State v. Twiggs, 233 N.J. 513, 544 (2018). "An indictment should be disturbed only on the 'clearest and plainest ground[s],' and 'only when the indictment is manifestly deficient or palpably defective.'" State v. Shaw, 241 N.J. 223, 239 (2020) (first quoting State v. Perry, 124 N.J. 128, 168 (1991); then quoting State v. Hogan, 144 N.J. 216, 229 (1996)). See State v. Saavedra, 222 N.J. 39, 55 (2015) (recognizing appellate courts review a trial judge's decision deciding the sufficiency of a grand jury indictment for abuse of discretion).

Although he maintains he was not the individual at the bank, defendant argues the State failed to show the perpetrator acted in a manner that would "purposely put someone in fear of immediate bodily injury," which is the element that elevates theft to robbery.

Defendant points to State ex rel. L.W., 333 N.J. Super. 492 (App. Div. 2000), where we reversed a trial court's decision adjudicating a juvenile delinquent because the State failed to prove the juvenile threatened the victim with or purposely put him in fear of immediate bodily injury. In that case, L.W. and his co-defendant V.J. called to the victim and stood on either side of him, along with three or four other juveniles. Id. at 494. V.J. asked the victim if he had a dollar, to which he responded in the negative and kept walking. Ibid. At V.J.'s behest, L.W. then punched the victim in the mouth. Ibid. On those facts, we reversed the adjudication, because the record did not support a finding that L.W.'s conduct established he "purposely put the victim in fear of immediate bodily injury in order to coerce the victim into relinquishing a dollar." Id. at 497.

We find the facts of L.W. substantially different than in this case. Defendant was not a bystander to another individual's request for a dollar. He walked into a bank wearing a black ski mask and handed the teller a demand for all the money she had, "no dye bags." As the trial court found, "the phrase 'or else' is strongly implied following the phrase 'give me the money,'" which a reasonable person would consider a threat of immediate bodily injury for non-compliance with the demand.

Defendant also mistakenly cites to State v. Cassady, 396 N.J. Super. 392, 395-97 (App. Div. 2007) in support of his argument. In that case, the defendant handed the teller a blank withdrawal slip with $5,000 written on it, told her to hurry and when she hesitated, he leaped over a seven-foot plexiglass partition onto the teller's counter and took the money from the drawer himself. Id. at 395-96. The teller "was afraid and thought that defendant might kill her or do something else," dropped the keys and ran into an adjacent room. Id. at 396. On those facts and in a split decision on that issue, we determined the defendant was entitled to a jury charge for the lesser-included offense of theft and reversed the conviction based on the trial court's denial of the request to charge. Id. at 400. The State filed an appeal as of right and the Supreme Court reversed our decision, holding as did Judge Fuentes in his dissent, "This was a bank robbery: plain and simple. . . . no rational jury could come to any other conclusion." State v. Cassady, 198 N.J. 165, 179 (2009) (citing Cassady, 396 N.J. Super. at 405 (Fuentes, J., dissenting)). The Court noted, "[T]o claim that defendant's actions in this case merely constituted a theft improperly minimizes defendant's conduct and wrongfully belittles its import and consequences." Ibid. Therefore, defendant's reliance on our overturned decision is misplaced.

Defendant further contends that in denying the motion to dismiss, the trial court relied on an assumption the bank had a plexiglass protective shield at the counter, when the bank teller testified at trial there was none. The trial court incorporated an incorrect assumption in its decision, noting "[m]ost bank tellers are separated from the general public by a protective shield. . . . While the teller may have been protected by the protective shield, the teller cannot predict what may have occurred if the money were not given to the defendant." In essence, the court's discussion addressed the issue of whether the existence of a shield insulates the teller from a threat. The fact that there was no protective shield here does not render the court's decision incorrect; to the contrary, that fact increases an objective fear of harm, since there is nothing protecting the teller from the perpetrator.

The Supreme Court acknowledged the danger of bodily harm inherent in a bank robbery in its discussion of the trial court's decision in Cassady:

> It noted the common understanding that "people that go into a bank to take money are prepared for combat. And they are prepared to hurt people, if they have to hurt people." It explained that "if you go into a bank and in order to get that bank teller to give you the money, you have to threaten them or put them in some kind of fear. So you start with that proposition[.]"

[Id. at 172.]

Here, too, the teller testified that, she did not "know if he had a weapon, if he would hurt me or my co-workers so I just did what he asked." She thought if she did not comply with his demand for money, she "would get hurt." Therefore, although the trial court noted the existence of a barrier, this misconception does not undermine its conclusion that the indictment was supported by evidence of a threat.

## B.

Defendant also argues the trial court erred by not instructing the jury on identification. We review a "missing instruction on identification . . . for plain error." State v. Sanchez-Medina, 231 N.J. 452, 468 (2018) (citations omitted). "Any error or omission shall be disregarded . . . unless it is of such a nature as to have been clearly capable of producing an unjust result . . . ." R. 2:10-2. The possibility of such an unjust result must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971). Defendant carries the burden of showing plain error. State v. Morton, 155 N.J. 383, 421 (1998).

We consider "[d]efendant's failure to 'interpose a timely objection [to] constitute[] strong evidence that the error belatedly raised here was actually of no moment.'" State v. Tierney, 356 N.J. Super. 468, 481 (App. Div. 2003)

14

(quoting State v. White, 326 N.J. Super. 304, 315 (App. Div. 1999)). Absent a request to charge or objection, "there is a presumption that the charge . . . was unlikely to prejudice the defendant's case." State v. Singleton, 211 N.J. 157, 182 (2012) (citing Macon, 57 N.J. at 333-34).

Further, any alleged plain "error must be evaluated 'in light of the overall strength of the State's case.'" Sanchez-Medina, 231 N.J. at 468 (quoting State v. Galicia, 210 N.J. 364, 388 (2012)).

In State v. Henderson, a defendant challenged an identification on the ground police officers had unduly influenced the eyewitness. 208 N.J. 208, 217 (2011). The eyewitness initially expressed doubt about the identity of the perpetrator but was able to confidently identify the defendant after meeting with investigators. Id. at 223-24. The Court identified numerous factors that can affect the ability of a witness to remember and identify perpetrators of crimes, resulting in misidentifications, and ordered an amplified, comprehensive jury charge. Id. at 298-99. The Model Jury Charges (Criminal), "Identification: In-Court and Out-of-Court Identifications" (rev. July 19, 2012) was then drafted and adopted by the Court.

In Sanchez-Medina, the Court made clear that "[w]hen eyewitness identification is a 'key issue,' the trial court must instruct the jury how to assess

the evidence—even if defendant does not request the charge." Id. at 466 (quoting State v. Cotto, 182 N.J. 316, 325 (2005)). The failure to deliver the charge is plain error, however, only if identification is "a critical issue at trial that defendant disputed." Id. at 469; see also Cotto, 182 N.J. at 325. An issue is made a "key issue" if it is "the major, if not the sole, thrust of the defense." State v. Green, 86 N.J. 281, 291 (1981). And, we must also consider the error "in light of 'the totality of the entire charge, not in isolation.'" State v. Burns, 192 N.J. 312, 341 (2007) (citation omitted).

Based on our independent review of the record, we conclude that the trial court's failure to give a detailed identification charge is not "of such a nature as to have been clearly capable of producing an unjust result." See R. 2:10-2. Unlike Henderson, this was not a case where an eyewitness identified defendant, which would implicate the Court's concerns about misidentification. And here, the jury was clearly instructed the State must prove beyond a reasonable doubt that defendant committed the crimes for which he was charged. In this regard, the court specifically instructed the jury to determine whether "the defendant is guilty or not guilty on the charge," and that "[t]he State has the burden of proving the defendant guilty beyond a reasonable doubt." The court's reasonable doubt charge repeatedly referred to "defendant's guilt" and when detailing the elements

16

of each of the charges against defendant, the court repeatedly stated an element of each is that "the defendant" committed each element.

Because defendant testified at trial and the State referenced the prior second-degree CDS conviction to impeach him, the court also instructed the jury they "may not conclude that the defendant committed the crime charged in this case or is more likely to have committed the crime charged simply because he committed a crime on another occasion."

Additionally, the court charged the jury to "weigh the testimony of each witness and then determine the weight to give it," specifically asking the jury to consider a witness's "means of obtaining knowledge of the facts" and to the extent the witness is "corroborated or contradicted . . . by other evidence."  The court also charged the jury on circumstantial evidence stating "[i]t is not necessary that all the facts be proven by direct evidence" and that a guilty verdict "may be based on . . . circumstantial evidence alone or a combination of direct evidence and circumstantial evidence."

Defendant's reliance on <u>State v. Davis</u> for the proposition that trial courts have an "imperative duty to instruct the jury on the State's additional burden of proving identification, even when not requested" is misplaced.  <u>See</u> 363 N.J. Super. 556, 558 (App. Div. 2003).  In <u>Davis</u>, we found "[o]n the facts presented,"

17

the absence of a detailed identification charge constituted plain error. Id. at 558-62. The defendant in Davis was convicted of distributing cocaine within a school zone after he purportedly sold it to a Drug Enforcement Agency officer who had never seen him before and identified him through a single photo twenty-five minutes after the drug transaction. Ibid. Although defendant's case was premised on misidentification, we noted "the corroborative evidence against a defendant may be sufficiently strong that the failure to give an identification instruction does not constitute plain error." Id. at 561 (citing State v. Salaam, 225 N.J. Super. 66, 70 (App. Div. 1988)). Based on the facts before us in that case, we found plain error in part because "the court gave no instruction whatsoever as to the State's obligation to prove identification beyond a reasonable doubt." Id. at 560. We held "the complete absence of any reference to identification as an issue or as an essential element of the State's case is improper." Id. at 561.

In Cotto, the Supreme Court, despite concluding that identification was a "key" issue, nonetheless affirmed a conviction where the jury was not provided a detailed identification charge. 182 N.J. at 326-27. The Court held a jury is properly instructed if the charge makes clear that "the State bears the burden of proving beyond a reasonable doubt that the defendant is the wrongdoer." Id. at

327. The Court found the charge to that jury, which instructed the State must prove "each and every element of the offense, including that of the defendant's . . . participation in the crime," satisfied this requirement. Id. at 326-27.

Under all the circumstances presented here, we are not convinced that the court's failure to sua sponte give an identification charge had the clear capability to bring about an unjust result. Unlike in Davis, the circumstantial evidence against defendant was substantial. The vehicle defendant was driving had distinctive markings including a wheelchair plate with a dealership vanity covering, dent in the hood, and partially working rear light, which matched the vehicle seen on surveillance video. The identification of defendant was made not just on a general description of his person, but on very particular if not unique characteristics: a light blue hooded sweatshirt with a white marking on the left sleeve, tan t-shirt underneath, black ski mask with no mouth opening, and purple "Crown Royal" bag. During his trial testimony, defendant did not concede he was the individual seen on surveillance video but nevertheless did not commit the robbery; rather, he testified he was not the individual seen on the video because he was in another town at the time of the robbery. The jury was sufficiently instructed on the burden of proof, evidence and credibility, and

19

therefore the absence of the "no identification" charge, although improper, did not constitute reversible error.

## C.

Finally, we consider whether the trial court erred in imposing sentence. "Appellate review of a criminal sentence is limited; a reviewing court decides whether there is a 'clear showing of abuse of discretion.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)). We defer to the sentencing court's factual findings and will not "second-guess" them. State v. Case, 220 N.J. 49, 65 (2014). If the sentencing court "follow[ed] the Code and the basic precepts that channel sentencing discretion," the reviewing court should affirm the sentence, so long as the sentence does not "shock the judicial conscience." Ibid.

Defendant contends the trial judge erred by not discussing his reasons for rejecting mitigating factor two, and although defense counsel did not ask for mitigating factor one (the defendant's conduct neither caused nor threatened serious harm) the court should have sua sponte found that factor. We find these arguments unavailing. Defendant was convicted of second-degree robbery of a bank, where he entered the bank wearing a ski mask and handed the teller an implicitly threatening note. She felt threatened, complied with the demand, and

20

collapsed after defendant exited the bank. Although the court did not explicitly discuss its reasons for rejecting mitigating factor two, its finding there were "no mitigating factors" does not constitute an abuse of discretion.

Defendant also contends the trial court considered the "wrong sentencing range" in imposing a fifteen-year extended term. The ordinary sentencing range for a second-degree offense is five to ten years, N.J.S.A. 2C:43-6(a)(2), and for a first-degree offense is ten to twenty years, N.J.S.A. 2C:43-7(a)(3). Counsel argues that the court erred because it should have started its calculus at five to twenty years, and instead started with an impermissible "presumptive term" between ten and twenty years. See State v. Natale, 184 N.J. 458, 487-88 (2005). This contention is belied by the record.

The trial court stated, "To the extent that there really aren't presumptive terms, that is something that was . . . moved away from in sentencing some time ago, although there can still be some sort of a range of sentence to be imposed." There is no indication the court impermissibly began its analysis at the upper end of the sentencing range or failed to appreciate the lower end of the range. Rather, the court discussed the aggravating factors, the absence of any mitigating factors, and found a fifteen-year term to be appropriate, "based on [defendant's] background."

As our Supreme Court determined, judges are no longer required to begin their sentencing analysis at a "fixed point of a statutory presumptive." Id. at 488. Rather, they may "pick the middle of the sentencing range as a logical starting point for the balancing process . . . but it is not compelled." Ibid. Here, given the preponderance of aggravating factors, nothing about the court's imposition of a fifteen-year term shocks the judicial conscience.

To the extent we have not expressly addressed any issues raised by defendant, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3561-21